*174 OPINION.
Steknhagen :
The Commissioner determined that the 1934 and 1935 income of the trust created by the indenture of February 8, 1930, was taxable to Chandler under the Bevenue Act of 1934, section 166, and he now contends also that it was so taxable under sections 167 and 22 (a).
*175 For this determination, the first reliance is upon article ninth, which provides for the transfer of all the trust property to the grantor and the termination of the trust if Chandler and his wife “shall be separated and cease to cohabit as man and wife for any cause whatsoever and regardless of whomsoever may be at fault.” This, it is argued, has the effect of a reservation of power to revest because the condition is wholly within the grantor’s control. It is said that by voluntarily separating from his wife, even temporarily, and notifying the trustee of the separation, the grantor may terminate the trust and reacquire the property. This is indeed a cynical view to adopt.[1] It can not be said with any assurance that an attempt by the grantor so to terminate the trust by a factitious separation or ceasing of marital relations would withstand attack in an equity court. Such a power would stultify the remaining provisions, including the restrictions of the indenture, such as that requiring the preservation or substantial replacement of the farm and the apartment. Such an interpretation of the instrument should be supported by evidence of some circumstance to compel it or at least to suggest that the article was more than a provision against a conceivable but remote contingency. We reject it.
It is then argued by the Commissioner that the broad control reserved under article seventh is equivalent to a power to revest. The article is entitled “Management of Trust Estate”, but the text goes further than management. The grantor may direct the sale “or other disposition” to himself for such consideration and upon such terms as he may direct. The terms are absolute. But they must be read in the light of the whole instrument and to preserve consistency with more specific provisions. Article third clearly provides for the preservation as trust property of the Park Avenue apartment or a similar habitation, and article fourth, although not free from ambiguity, seems to contemplate the preservation of the Brandywine Farm property and its occupancy by the grantor and his wife. Any direction by the grantor to the trustee that either of those properties should be transferred to himself would in any litigation in equity be limited by those articles. So much of the corpus is therefore beyond the power of the grantor to revest in himself.
But there is nothing else in the trust instrument from which it could be said that the power is narrower than the broad language of article seventh reserves. Thus the grantor may direct the sale to himself of the United Dairy stock, the Ice Co. bonds, or the Chandler & Co. stock, or any securities that have been substituted *176 for them, at his own price and his own terms, and the trustee must comply and is freed from liability for doing so. Whether this unqualified power to fix the price would be read as permitting- the grantor to direct a sale to himself for a nominal price or upon terms so favorable as to amount substantially to a gift it is unnecessary to consider. Cf. Charles T. Fisher, 28 B. T. A. 1164. The purchase of the securities at a substantial but low price would still be fro tanto a power to revest so much of the property as exceeded the purchase price, Charles T. Fisher, supra; and since there is no way in advance of drawing the line between an adequate and an inadequate price, either of which the grantor had the power to fix, the power must be judged by its latent possibilities. Therefore, on this ground, all the trust property, except the apartment shares and lease and the Brandywine shares, is within the terms of section 166 and the income therefrom is for that reason taxable to Chandler. Henry A. B. Dunning, 36 B. T. A. 1222, and Christopher L. Ward, 40 B. T. A. 225, give petitioner no support, for in both the power reserved by the settlor to fix the price at which sales might be made applied only to sales to others and the settlor was not a prospective purchaser.
The respondent argues that the income is taxable to Chandler because it is applicable to the payment of premiums on insurance on the grantor’s life and is therefore within 167 (a) (3). Article second of the indenture provides:
Second: Policies: Grantor agrees to pay to Trustee, from time to time, such sums of money as may be required for the payment of the premiums becoming due on all of the policies in the Trust Fund, after the application to the payment of such premiums of the dividends, if any, allowed by the several companies issuing such policies upon said policies, it being understood and agreed that all such dividends are to be used in the reduction of premiums. Trustee shall pay the premiums which may become due and payable on the policies, or any of them, by the application of such dividends and from the cash furnished from time to time for that particular purpose by the Grantor. If such dividends and such cash as shall be so furnished by the Grantor are at any time insufficient to pay said premiums, or any thereof, Trustee shall, as Beneficiary shall from time to time direct, use for such purpose income from the Trust Fund or shall borrow upon said policies or any of them, or shall exercise any option given in any policy to change the same to paid up insurance, or to extended paid up term insurance, or to surrender the same and receive the cash surrender value thereof. * * *
Dividends received by the trustee on life insurance policies amounted to $118.05 in 1934 and $1,337.61 in 1935, and these were used by the trustee to pay such premiums. In addition, the trustee received from the grantor $7,717.63 in 1934 and $5,045.82 in 1935 to apply to the premiums. The Commissioner would tax all of these amounts.
*177 The dividends received from the insurance company are by section 22 (b) expressly excluded from gross income notwithstanding that the trust indenture, as in article fifth, contains some oblique suggestions that such dividends may have been regarded by the draftsman of the instrument as trust income and so treated for the purpose of the trust. Such an intimation has no power to make taxable what the statute exempts. This is true even though the dividends may be imputed to the grantor.
The indenture clearly states that the insurance premiums should be first reduced by the insurance dividends and then paid with contributions from the grantor. Only if such amounts received are insufficient to pay the premiums may the trustee use trust income at the direction of the beneficiary. There was, however, no need to use any trust income and none was in fact so used. Cf. Genevieve F. Moore, 39 B. T. A. 808; Mott v. Commissioner, 85 Fed. (2d) 315.
The respondent then presses an argument that the amounts contributed by the grantor to the trustee to make up the amount needed to pay insurance premiums is income to the trustee and since it is used to pay such premiums it is taxable to the grantor under section 167 (a) (3). The effect of this circuitous reasoning is to tax the grantor upon amounts expended by him. It is plainly insupportable. The contributions received by a trust from the settlor are not taxable income of the trust. Section 167 (a) (3) does not attempt to label receipts by the trust, but, dealing with income of the trust, imputes it to the grantor to the prescribed extent of its use for the payment of insurance premiums. If any of the trust income were used to pay such premiums, it would to that extent be taxable to Chandler; but since none of it was, there is no support in section 167 (a) (3) for taxing it to him.
There is a clear distinction in Alfred F. Pillsbury, 19 B. T. A. 1229, where the trustee held a note of the grantor the interest on which was, when received from him, applied to insurance premiums. Such interest from a debtor, even though he be the settlor, is deductible by the debtor and income of the trust, and its use by the trust for the payment of premiums on policies insuring the settlor’s life brings it squarely within the statute. But this can not be said of contributions by the settlor which are not deductible by him and, so far as they are paid by him with his income, have already been the subject of tax.
The respondent argues elaborately that the control of the trust property and income is so complete in substance as to amount to unfettered command and that the entire trust lacks substance. This broad conception of the trust as an empty form is not supported by *178 the evidence, as the findings show. As a general proposition, the trust must be recognized as such under the revenue act, even though its terms and operation invite the application of sections 166 and 167.
It is contended that the income of the trust serves to defray the personal expenses of Chandler and hence that Douglas v. Willcuts, 296 U. S. 1, requires this income to be imputed to him. As to the income which in the discretion of the trustee could be used for the support, benefit, maintenance, or education of the wife and children, the evidence shows that no part of the trust income was so used and hence no part may be taxed to the settlor on that ground. E. E. Black, 36 B. T. A. 346; Hudson v. Jones, 22 Fed. Supp., 938; Martin F. Tiernan, Trustee, 37 B. T. A. 1048; dismissed, C. C. A., 3d Cir.; Alfred C. Berolzheimer, 40 B. T. A. 645; cf. Raoul H. Fleischmann, 40 B. T. A. 672, 683.
There was, however, $6,190.06 in 1934 and $5,658.48 in 1935 paid by the trustee for rent and assessments on the Park Avenue apartment, and $10,834.70 in 1934, and $8,686.92 in 1935 paid by the farm corporation for expenses of the Brandywine Farm. Of the latter amounts only $652.06 in 1934, and $711.57 in 1935 were operating expenses of the corporation’s business. The rest may be regarded as expenses of the lodge. Both the apartment and the lodge were occupied by the family and it is fair to regard their expense as Chandler’s “personal, living and family expenses” (Bevenue Act of of 1934, sec. 24 (a) (1)). The payment of them by the trustee and the corporation, except of the small amount of business expenses, had the effect of discharging his family obligations. Thus the amounts are to be treated as his income and taxed to him. Hill v. Commissioner, 88 Fed. (2d) 941.
It is stipulated that the rental value of Brandywine Lodge was $4,000 per annum. Chandler, as president of the farm corporation, performed substantial services for it in directing its business, which to a substantial extent comprised the purchase and sale of securities. It is a fair inference that the occupancy of the lodge was permitted to him rent free as compensation for the services which he rendered. Certainly there is no support in this record for treating the occupancy as a gratuity given to him by the corporation or as essential to the corporation in the conduct of its business. Cf. Arthur Benaglia, 36 B. T. A. 838; dismissed, 97 Fed. (2d) 996. The agreed rental value of the lodge is therefore properly to be included within Chandler’s income.
The correlative effect of this opinion upon the deficiency of Mrs. Chandler will be redetermined under Bule 50.

Decision will be entered under Rule 50.

 See “Rex v. Pratt and Merry. The Tax oh Virtue.” A. P. Herbert, Uncommon Law, p. 233.