## HOPKINS v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9566.

Circuit Court of Appeals, Sixth Circuit.

Aug. 21, 1944.

684

David A. Gaskill, of Cleveland, Ohio (Thompson, Hine & Flory, David A. Gaskill, Earl P. Schneider, and Glen O. Smith, all of Cleveland, Ohio, on the brief), for petitioner.

L. A. Post, of Washington, D. C. (Samuel O. Clark, Jr., Sewall Key, J. Louis Monarch, and L. W. Post, all of Washington, D. C., on the brief), for respondent.

Before SIMONS, HAMILTON, and McALLISTER, Circuit Judges.

HAMILTON, Circuit Judge.

The question for decision is whether net taxable income of two trusts set up by pe-

titioner for the benefit of his two sons is taxable to him.

Petitioner was sixty-one years of age on December 31, 1935, and at that time had two sons, fifteen and sixteen years of age respectively. Petitioner was president of the Cleveland Graphite Bronze Company, a large manufacturing company in Cleveland, Ohio, and owned 43,000 shares of its capital stock which had an approximate value of $2,000,000. The stock of the company was listed on the New York Stock Exchange. On December 31, 1935, petitioner transferred two 5,000-share certificates of this stock to the Central United National Bank of Cleveland (now Central National Bank of Cleveland) to be held and administered by the bank and petitioner as co-trustees, pursuant to the terms of two declarations of trust executed by petitioner on that date for the benefit of each of his sons. The terms of each of the trust instruments, insofar as material here, are identical.

Upon the settlor's death, resignation, failure or inability to act as co-trustee, his son, Ben F. Hopkins, Jr., was to act if at that time he was twenty-one years of age; if not, another son of the settlor David Hopkins, was to succeed him until Ben F. Hopkins, Jr., attained his majority. If either of these two sons became successor trustee, the one so acting was empowered to designate in writing his successor. The settlor reserved the right at any time during his lifetime to remove the corporate trustee and to appoint as successor, a bank or trust company incorporated under the laws of some one of the states or of the United States and possessing combined capital and surplus of not less than $4,000,000. The same power of removal and substitution of the corporate trustee was granted to the settlor's successor trustee.

Under the provisions of the trust instruments, the corporate trustee had legal title to the trust assets but both trustees were jointly empowered to receive and collect the income and revenues of the trusts and sell, vest and revest the assets without being under the supervision of any chancery court or subject to the provisions of statutory law or rule relating to the management of trust estates. The trustees had to agree on all powers exercised by them and each was relieved from personal liability except for fraud or bad faith. Persons dealing with the corporate trustee were not required to ascertain whether the co-trustee concurred in the transaction and persons dealing with either trustee were relieved of liability except to the extent such persons obligated themselves by deed, lease, proxy or contract with the trustees or either of them.

The trustees had full voting and exchange powers as to all stocks and securities held by the trust. They were directed by the settlor, in the event of his death, to purchase assets from the settlor's estate or to exchange them, or to make loans to his administrator or executor for the purpose of paying inheritance or succession taxes of his estate in order to avoid any unnecessary drain thereon. Any securities purchased or exchanged were to be at their then prevailing market value or price and, if without market value, they were to be purchased or exchanged on such terms as the trustees deemed proper.

The settlor reserved the right to add other property to the trust estates by conveying, transferring or delivering the same to the corporate trustee. The corporate trustee was to receive for its services three percent of the gross income of the trust estate so long as the settlor acted as co-trustee and thereafter the corporate trustee was to receive five percent of the gross income and one percent of the value of any distribution of principal made to beneficiaries. The trustees were prohibited from using any part of the income from the trust estates, but could use the principal from each to pay insurance premiums on policies on the life of the settlor held as a part of the trusts. The trustees were authorized to determine whether money or property coming into the possession of the corporate trustee was principal or income and to charge or apportion expenses and losses to principal or income as they deemed just and equitable.

The income from the respective trusts was to be accumulated and added to the principal thereof until the settlor's sons arrived at the age of twenty-one years when it was to be paid to each, monthly, so long as he lived. However, so long as the settlor remained co-trustee, he was empowered to direct his corporate trustee to use either the income or principal of the respective trust as he deemed to be for the best interests of his respective sons.

Upon the death of either son, the trust estate remaining unconsumed in that trust was to vest in and be distributed in such shares and amounts and in such manner

as that son should appoint by last will and testament or codicil, provided such power was exercised in favor of that son's widow, his lawful issue, his mother or his brothers.

In the event of the death of either son without exercising such power of appointment, said trust estate, subject to the trust set forth for the benefit of his wife, if one survive him, should vest in and be distributed to his lawful surviving issue per stirpes, and if such issue at that time should be under twenty-one years of age, the share or shares of such issue should be held by the trustees and the income accumulated and added to the principal of such issue's share until such issue became of age when distribution should be made.

If no living beneficiaries of the respective trusts survived at their termination, the corpus of each trust vested in and was distributable to the Cleveland Foundation of Cleveland, Ohio.

Each of the trust instruments by its terms, restrained the voluntary and involuntary transfer of the interests of the respective beneficiaries during the life of the trust. Each trust instrument was irrevocable with the exception of the right reserved by the settlor during his lifetime, in case it was found or considered that the trust instrument was uncertain or incomplete in any respect, to modify its terms for the purpose of clarifying, defining or enlarging the powers of the trustees in order to facilitate administration. Any such modification was to be made in writing and signed by the settlor and delivered to the corporate trustee.

On January 13, 1939, the settlor executed a supplemental agreement to each of the trusts in which he directed that the trustees, during the life of his respective sons and upon the written request of either, should have the discretionary power to make payments out of the corpus of the trust created for such son for the maintenance, comfort, support or education of that son, or his wife, or his children and that the trustees, upon written request of either son should pay to him out of the respective sums of the principal fund of the trust estate created for him, a sum sufficient to purchase or to build a suitable dwelling house for his own use.

On March 24, 1936, according to the powers reserved under the trust instruments, the settlor transferred to each trust $92,000 of his life insurance. As the premiums became due on each of these policies for the years 1936 to 1939, inclusive, the settlor paid to the corporate trustee a sum equal thereto and the trustees paid the premiums to the insurer. During the year 1936, the trustees sold the shares of stock of the Cleveland Graphite Bronze Company held by the trusts for an average of $39.70 per share. After these sales were made, petitioner owned approximately 33,000 shares of the company's stock.

Petitioner, within the time provided by law, filed a gift tax return including therein the value of the assets which he had transferred to the trusts and paid the taxes due thereon. In the gift tax return he valued the stocks of the Cleveland Graphite Bronze Company at $45⅞ per share.

Each of the trusts realized net taxable capital gains for the years 1936, 1938 and 1939, the sums thus realized being added by the trustees to the principal of the trusts. No part of the principal or income of the trust estates was distributed to beneficiaries during any of the years 1936 to 1939, inclusive.

Petitioner expended out of his own funds for the maintenance and education of his two sons who were beneficiaries of the respective trusts, the following amounts:

| | |
|---|---|
| 1936 | $6,000.00 |
| 1937 | 6,000.00 |
| 1938 | 9,000.00 |
| 1939 | 9,000.00 |

The following are the tax deficiencies in question:

| | |
|---|---|
| 1936 | $60,082.56 |
| 1937 | 9,048.87 |
| 1938 | 5,316.28 |
| 1939 | 10,525.08 |

The Commissioner held petitioner taxable on the income of the trust estates for each of the years involved under the provisions of Sections 22(a), 166 and 167 of the Revenue Acts of 1936 and 1938, 26 U.S.C.A. Int.Rev.Code, §§ 22(a), 166, 167.

The Tax Court of the United States sustained the Commissioner on the ground that the income of the trust estates was taxable to petitioner under the provisions of Section 167 of the Internal Revenue Code, 26 U.S.C.A.Int.Rev.Code, § 167. The Tax Court gave no consideration to the applicability of Sections 22(a) and 166.

So far as material here, Section 167 provides that where any part of the income of a trust is, or in the discretion of the grantor may be, held or accumulated for future distribution to the grantor or may, in the discretion of the grantor, be distributed to the grantor or is, or in the discretion of the grantor, may be applied to·pay premiums on insurance policies on the life of the grantor, then such part shall be included in computing the net income of the grantor.

■ Section 167 compels the inclusion of the income of a trust in the settlor's taxable income to the extent that any part of it may, at the settlor's discretion, be applied to discharge an obligation of the settlor either contractual or one imposed by law, or where the income of the trust may be used for the payment of life insurance premiums on the policies on the settlor's life. The purpose of the statute was to prevent the avoidance of surtaxes by trust devices and the statute is to be interpreted in the light of that purpose.

■ The degree of control exercised by the settlor may be determined from the language of the trust instrument interpreted in the light of the rules of law ·prevailing at the situs of the trust. If any part of the income of the trust may, in the settlor's discretion, be used for the discharge of his personal obligations, the part so used or usable is taxable to him. If the settlor has retained dominion over the income and corpus of the trust as a token only of his continuing sense of obligation to the objects of his bounty the income of the trust is not taxable to him except to the extent that he may use it to discharge ·his legal obligations.

The settlor here declared he was creating the trusts in order to provide his respective sons with sufficient income to maintain them in health and comfort during their lifetime. That he might accomplish this purpose in his own way, it was provided in each of the trust instruments that so long as the settlor was living and competent to act, either the income or principal of the trusts should be used and applied for the best interests of his sons in such manner as he should in his sole discretion determine.

■ The settlor wished to give his sons the benefit of his sound ideas of business and his best judgment in the administration of the estates. It may be said that the settlor wished to retain dominion over the trusts in satisfaction of his desire to serve the objects of his bounty, but in the attainment of this objective, the settlor, by the terms of the trust, might have relieved himself of the obligation imposed on him by law to maintain, care for and educate his infant sons.' The fact that the settlor did not use, or intend to use, the trust income for the purpose of discharging his parental obligation or that his infant children did not look primarily to the trust income for their maintenance, does not necessarily make Section 167 inapplicable.

Petitioner contends that, under the provisions of the trust instruments, he had no right to direct the use of the trust income to discharge the duty of support he owed his minor sons.

■ This argument is based first on the ground that the discretion of the settlor commences after each of his respective sons arrives at the age of twenty-one. The applicable paragraphs of the trust agreements provide ·in the first clause that the net income of the trust shall be accumulated and added to the principal until the sons arrive at the age of twenty-one years and thereafter the net income shall be paid to him monthly. Immediately following this clause is the proviso in which it is stated that the settlor may require either the income or corpus of the trust to be expended for the best interests of his son.

There is nothing in the wording of the paragraph which lends color to the conclusion that the proviso was inoperative until after the beneficiary had reached the age of twenty-one. On the contrary, it is clear that the proviso must be considered as incorporated into and forming a part of the whole paragraph. The income of the trust was payable directly to the son as a matter of right and without restriction when he became of age. The proviso relates to both net income and principal of the trust. It is clear the settlor reserved the right to direct the distribution of not only the net income but the corpus of the trust until each son arrived at the age of twenty-one and thereafter he reserved the power to direct the distribution of the corpus.

The second ground of petitioner's contention is that the General Code of Ohio, Sec. 7997, places the duty on the father of a minor child to support such child out of his own property or by his labor, and that

the father as natural guardian of his minor child is charged with his care, nurture, welfare and education and also the care and management of the child's estate, and that as the trust instruments in question limit the expenditures out of the trust estate at the discretion of the father to his sons' best interests, the settlor, after the creation of the trusts held the power of disposition of the income and res as a trustee and was subject to fiduciary obligations and that by reason of these obligations, the settlor could not exercise his discretionary power to discharge his personal obligations out of the trust income for the maintenance and education of his children.

■ The settlor of a trust can reserve to himself any power which he desires with respect to the property, there being no specific limitation to the rule. He may reserve the power to control the trustee in making investments or in disposing of investments or of the income of the trust. If the reserve power is for the benefit of some one other than the settlor, the holder of the power has a fiduciary duty. Cleveland Trust Company v. White, 134 Ohio St. 1, 15 N.E.2d 627, 118 A.L.R. 475. As to whether the power reserved to the settlor to control the trustee in disposing of the corpus or income of the trust is a power for the benefit of the beneficiaries of the trust generally or for the benefit of the settlor alone or for the benefit of both, is a question of intention and the intention of the settlor is to be determined from a consideration of the entire instrument.

Applying this rule to the present trusts, we find that the trustees were authorized to deal generally in all kinds of property and in accomplishing the purposes of the trust they were authorized to make advances or borrow money at any time and upon such terms and conditions as the trustees deemed proper for the improvement, protection and preservation of the trust estate, and each trustee was authorized to make advancements to the trust estate out of his own funds, and to put the trust property in lien to secure repayment. The trustees were also authorized to use the assets of the trusts in bringing about the reorganization, consolidation and merger of corporations in which the trust owned stocks or securities. They were also directed by the settlor to use the trust assets for the payment of succession or inheritance taxes of the settlor's estate.

■ The corporate trustee in our opinion was under the duty to comply with the directions of the settlor in the disposition of the trust res and income. Petitioner could have used the income from the trust to discharge his legal obligation of support, even though in so doing, he was acting in a fiduciary capacity, because the discharge of his fiduciary obligation in no way conflicted with or was antagonistic to the discharge of his obligation to support, maintain and educate his infant sons. It follows from this that the reserve powers in the settlor could have been used for his benefit and were not for the sole benefit of the cestuis que trustent.

It is not without significance that the settlor, in providing the res for the trust, used stock of a corporation in which he retained a large number of shares, and in which corporation he was a managing and directing officer and that shortly after the creation of the trusts he transferred to each $92,000 of his life insurance, the proceeds of which could have been used to discharge estate and succession tax liability. The paragraph of the trust instruments reserving to the settlor the power to require the trustees to use the trust res and accretions for the best interests of the settlor's son, is to be construed in the light of the other trust provisions and not as if it stood alone.

■ It has long been the rule that the income of a trust which is used for the support, maintenance and education of a settlor's minor children is taxable to the settlor, assuming that he was under legal or contractual obligation to support the beneficiaries. Douglas v. Willcuts, 296 U.S. 1, 56 S.Ct. 59, 80 L.Ed. 3, 101 A.L.R. 391; Helvering v. Schweitzer, 296 U.S. 551, 56 S.Ct. 304, 80 L.Ed. 389; Helvering v. Stokes, 296 U.S. 551, 56 S.Ct. 308, 80 L.Ed. 389. Conversely, the rule has prevailed that unless the income is actually used to discharge the parental duty of support, it is not taxable to the settlor. Chandler v. Commissioner, 3 Cir., 119 F.2d 623.

In the case of Helvering v. Stuart, 317 U.S. 154, 167, 63 S.Ct. 140, 87 L.Ed. 154, the Supreme Court decided that where trustees without any interest adverse to the grantor, were authorized to devote so much of the net income of the trust as "to them shall seem advisable" to the "education, support and maintenance" of the grantor's

minor children, the possibility of the use of trust income to relieve the grantor pro tanto of his parental obligation, was sufficient to make the entire income of such trust taxable to him, whether or not the grantor used it to discharge the obligation. Section 167 construed in the light of the Stewart case, applies when the provisions of the trust instrument make possible the application of the trust income to the settlor's obligations to the extent it is so used or may be so used. The Revenue Act of 1943, Section 134(a) added a new subsection (c) to Section 167, 26 U.S.C.A.Int. Rev. Acts, retroactively effective, specifically directed at the rule of the Stuart case. The Senate Finance Committee, in its report, stated: "Your committee believes that the rule in effect prior to the Stuart case is a sound rule and has inserted a provision in the bill to restore the old rule." Sen. Finance Committee Report No. 627, 78th Cong. 1st Sess. p. 29.

Under the amendment, the income of a trust is not taxable to the settlor merely because such income in the discretion of another person, other than the settlor or the trustee, may be applied or distributed for the support or maintenance of a beneficiary whom the settlor is legally obligated to support or maintain, except to the extent that such income is so applied or distributed.

The amendment has no application where the trust income may, in the settlor's sole discretion, be applied to the support of his legal dependent. This construction is made clear by the report of the Senate Finance Committee, wherein it is said, "Subsection (c) is not applicable if discretion to apply or distribute the trust income for support, maintenance or education rests solely in the grantor or in the grantor in conjunction with other persons unless the grantor has such discretion as trustee." Sen.Rep. No. 627, 78th Cong. 1st Sess. (1943) 56.

The settlor here transferred the legal title of the corpus of the trust to his corporate co-trustee with no provision, either express or implied, that the trustees were to distribute any part of the principal or income of the trust to the beneficiaries until the settlor's children arrived at the age of twenty-one. The trust instrument provided that the power to apply the income or corpus of the trust was in the settlor "in such manner as I may in my sole discretion deem to be to his best interest."

The exercise of this discretion was fiduciary in character but the settlor was not acting as a trustee as that word is used in the Revenue Act. It is there used in its technical sense. It was provided in the trust instruments in the paragraph defining the powers to be exercised by the trustees that "every such action undertaken by the trustees shall be deemed proper and, except for fraud or bad faith, no claims shall be asserted against the trustees or against any trustee on account of any action taken or approved by the trustees or on account of any action taken in which one of the trustees does not consent or approve."

This takes the present trustees out of the ordinary rule because the contracts relieve the trustees of the duty to exercise such care and skill as a man of ordinary prudence would exercise in dealing with his own property; and, if the trustee possesses greater skill than that of a man of ordinary prudence, he is under a duty to exercise such skill as he has.

The one who creates a trust is said to settle it on another, and is referred to as "donor," "settlor" or "trustor." He to whom the property is given in trust and in whom the legal title vests is usually the trustee. In the case at bar the legal title to all the trust assets was in the corporate trustee and the power reserved to the settlor was as an individual.

In the case of Gould v. Gould, 245 U.S. 151, 38 S.Ct. 53, 62 L.Ed. 211, the Supreme Court decided that the net income of a divorced husband subject to taxation, was not decreased by the payment of alimony by a court judgment and on the other hand, the sum received by the wife on account thereof did not give rise to income to her. The basis of the decision was that the divorced wife was not a separate taxpayer from her former husband. In the case of Douglas v. Willcuts, supra, the Supreme Court had before it the question whether the income of a trust set up by a husband in connection with a divorce decree for the support and maintenance of his wife was taxable to the settlor. In that case the Supreme Court held the trust income taxable to the settlor. The court in extending the rule in the Gould case, stated the Douglas trust was created "as the channel for the application of the income to the discharge" of the husband's obligation and left the nature of the transaction unaltered. It held "the

net income of the trust fund, which was paid to the wife under the decree, stands substantially on the same footing as though he had received the income personally and had been required by the decree to make the payment directly." [296 U.S. 1, 56 S.Ct. 63, 80 L.Ed. 3, 101 A.L.R. 391]. There was implicit in the court's decision that trusts were not to be considered as separate taxable entities from their creators where the income therefrom, but for the trust, would otherwise be attributable to the settlor.

The Douglas case extended the rule laid down in the case of United States v. Boston & Me. R. R., 279 U.S. 732, 49 S.Ct. 505, 73 L.Ed. 929, and Old Colony Trust Company v. Commissioner, 278 U.S. 716, 49 S.Ct. 499, 73 L.Ed. 918, that income although not actually received by a taxpayer but which at his direction is paid to another for the taxpayer's benefit, is taxable to him.

In the cases of Helvering v. Schweitzer, supra, and Helvering v. Stokes, supra, the Supreme Court decided that the net income of trusts for the maintenance of the settlor's children was taxable to the settlor. In the case of Helvering v. Blumenthal, 296 U.S. 552, 56 S.Ct. 305, 80 L.Ed. 390, the income of a trust created for the payment of the settlor's debt was taxable to the settlor. The Board of Tax Appeals (now the Tax Court) in interpreting the Supreme Court decisions, confined their application to income from trusts which was in fact used for the discharge of the settlor's legal obligations. Black v. Commissioner, 36 B.T.A. 346; Tiernan v. Commissioner, 37 B.T.A. 1048; Chandler v. Commissioner, 41 B.T.A. 165; Deuble v. Commissioner, 42 B.T.A. 277; Wolcott v. Commissioner, 42 B.T.A. 1151. The Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, acquiesced in these decisions by promulgating G.C.M. 18972, 937-2 Cum.Bul. 231, 233, wherein it was provided that the fact "that the trust income may be distributed for the support of such persons" (but actually is not) does not make such income subject to distribution to the grantor within the meaning of Section 167 of the Revenue Acts here involved.

After the decision in the Stuart case, the Department modified its previous acquiescence and pursuant to the Internal Revenue Code, Section 3791(b), 26 U.S.C.A. Int.Rev.Code, § 3791(b), which grants to the Commissioner with the approval of the Secretary of the Treasury, the power to prescribe the extent, if any, to which any ruling, regulation or Treasury decision relating to the Internal Revenue laws shall be applied without retroactive effect, promulgated G.C.M. 23723, Int.Rev.Bul. 45, May 25, 1943, the substance of which was that under authority of Section 3791(b), the rule of G.C.M. 23722 (modifying G.C.M. 18972) would be applied only to cases in which the return of the grantor was for a taxable year ending after December 31, 1942, except to the extent it might become necessary to apply such rule retroactively in order to protect the interests of the Government. It was expressly provided that the ruling has no application to a case where the grantor of a trust may be required to include the income thereof in his gross income under the rule of Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788, or where the use of trust income to satisfy obligations of the grantor is not discretionary with the trustee, but is mandatory, either as to all or a portion of the income whether by direct application to such obligations or by payment of some or all of the income to the grantor for such purposes upon his demand or otherwise. It was not intended that the rule laid down in the earlier cases to which reference has been made that where the settlor had the discretion as to the disposition of the income that he should be relieved of the impact of the Stuart case.

Since the use of the income in the present trust to discharge an obligation of the settlor was not within the discretion of the respective trustees but was in the sole discretion of the settlor, the ruling of the Treasury Department has no application.

Under the laws of Ohio the duty of the parent to support his infant child extends to necessary support which includes food, clothing, education, medical care and a suitable residence all according to the father's means.

Petitioner urges that the doctrine of the Stuart case raises the presumption only that all of the income of a maintenance trust is used to discharge a legal obligation of the settlor and that such presumption disappears when there is a showing that the income of the trust is in excess of the sum necessary to discharge this obligation. He insists the facts in the case at bar show that the total amount expended by

petitioner in each of the tax years in question in full discharge of his legal liability was much less than the income of the respective trusts and therefore the only part of the income of the trusts taxable to him in any event is a sum equal to the amounts expended by him for the maintenance, care and education of his respective sons for each of the years involved.

The applicable revenue statute is as follows, "where any part of the income * * * may * * * be distributed to the grantor * * * then such part * * * shall be included in computing the net income of the grantor."

The Supreme Court in the Stuart case attributed to the grantor of the trust the entire income by reason of the possibility of its use for the discharge of the settlor's legal obligation. There was no issue made in that case that the entire income of the trust was in excess of the sum necessary to discharge such obligation of the settlor; therefore, that case is not decisive on the issue presented to us. Some of the cases have held that the settlor has in effect measured his obligation by the size of the trust created and the probable income therefrom and that he will not be heard to claim that any part of the income was in excess of his legal obligation. Commissioner v. Grosvenor, 2 Cir., 85 F.2d 2; Schweitzer v. Commissioner, 7 Cir., 75 F.2d 702.

In each of the cited cases, the trust instrument provided that the net income of the trust was to be expended for the support and education of the children during their minorities. That condition does not prevail here. In the case at bar, the combined income of the trusts in 1936 was $252,563.94; for 1937, $15,925.43; for 1938, $11,969.32; for 1939, $17,064.18. The sums expended by petitioner during each of these years for the maintenance and education of his respective sons were much less than the income from each trust. During each of these years the personal expenditures of petitioner on behalf of his infant sons fully discharged his parental obligation.

It is true the only limitation on petitioner's expenditures out of the trusts for the maintenance and education of his sons was the settlor's desires and the value of the trust estate, but as we view it, this does not support the presumption that there is a possibility of the use of the entire income of the trust, for the discharge of the settlor's legal obligation.

In fixing the incidence of tax by reference to Section 167, we are applying statutory language and the rule prevails that the words of the Act reasonably construed must reach the alleged subject of taxation. Helvering v. Wood, 309 U.S. 344, 60 S.Ct. 551, 84 L.Ed. 796. Taxing statutes take from a taxpayer no more than the language of the statute plainly shows the Congress intended. United States v. Stroop, 6 Cir., 109 F.2d 891. Section 167 has its limits and it goes no further than the retained interest of the settlor in the income of the trust. The rationale of the Stuart case and its predecessor Douglas v. Willcuts does not foreclose the rule that Section 167 fixes a maximum of income from a maintenance trust of a sum equal to the income of the trust usable for the discharge of the settlor's contractual, common law or statutory liability. The statute plainly says that only such part of the income of the trust as is used in the preceding part of the Section shall be included in computing the net income of the grantor. It does not make sense to say that under the laws of Ohio, $252,563.94 would be the usual or ordinary sum to be used for the maintenance and education of two infant children regardless of the estate of the parents. The court should not attribute such incongruity to a taxing statute, where the incidence of the tax is made to turn on the use of trust income for the legal support and maintenance of a settlor's infants.

When creating the present trusts, the settlor should have recognized that some portion of the income could be used to discharge his legal obligation for support and it is incumbent upon him to show the extent of that obligation. He can do this by showing what he has in fact expended during the tax years on that account and also by showing his financial status.

There is no administrative difficulty in the case at bar in determining the precise amount of the sum which petitioner could have expended out of the trust income for the maintenance of his two sons. The precise amount is stipulated and as we view it, the maximum sum taxable to him out of the income of the trusts under Section 167 is a sum equal to that in fact expended by petitioner for that purpose in each of the taxable years.

It was unnecessary for the Tax Court, when rendering its decision based

on Section 167, to apply this section in connection with Section 22(a) of the Code.

The facts may show that the settlor of the present trusts did not create separate tax entities distinct from himself. Under such circumstances he realized an economic gain for the tax years through such complete control of the trusts as to make the income thereof his own. Helvering v. Clifford, 309 U.S. 331, 335, 336, 60 S.Ct. 554, 84 L.Ed. 788.

We do not infer that such conclusion must be reached, but the cause is reversed and remanded for determination by the Tax Court of that issue. Helvering v. Stuart, supra, 317 U.S. 168, 169, 63 S.Ct. 140, 87 L.Ed. 154.

SIMONS, Circuit Judge (concurring).

While it is difficult for me to conceive of any facts which, in the light of the clear terms of the trust instruments would help to determine whether control of the trust corpus or income was or was not so far reserved by the settlor as to make him liable for taxes on trust income under § 22 (a), by the application of the Clifford doctrine, I am nevertheless compelled to conclude, as did the court in Bush v. Commissioner of Internal Revenue, 2 Cir., 133 F.2d 1005, that the Stuart case requires that we submit that issue as an issue of fact to the Tax Court, notwithstanding the conventional view that the interpretation of a written instrument raises a question of law.