Lawrence D. Buhl v. Commissioner.
Buhl v. Commissioner
Docket No. 1576.
United States Tax Court
1944 Tax Ct. Memo LEXIS 32; 3 T.C.M. (CCH) 1250; T.C.M. (RIA) 44383; November 28, 1944
*32 H. A. Mihills, C.P.A., and Henry I. Armstrong, Jr., Esq., for the petitioner. Philip M. Clark, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: The proceeding was brought for a redetermination of a deficiency in petitioner's income tax for the year 1939 in the amount of $29,796.66. Other issues having been conceded by petitioner, the only issue here involved is whether petitioner is taxable on the income of the trust created by him, under sections 22 (a), 166, and 167 of the Internal Revenue Code. The case was presented by stipulation and evidence adduced at the hearing. Facts hereinafter appearing which are not from the stipulation are otherwise found from the record. Findings of Fact The stipulated facts are hereby found accordingly. Petitioner is a resident of Grosse Pointe Farms, Michigan. He filed his income tax return for the year 1939 with the collector for the Michigan district. On December 17, 1934, petitioner by one instrument created four trusts, each for the benefit of one of his children. One was for the benefit of an adult child. The remaining three of the trusts thus created were as follows: No. 777 for the benefit of Elizabeth *33 Ann Buhl, now known as Ann Buhl Mitchell; No. 778, for the benefit of Mary Caroline Buhl, now known as Mary Buhl Aycrigg; and No. 779 for the benefit of Lawrence D. Buhl, Jr., son of petitioner. All of these three beneficiaries were minors during 1939, the year here involved. The trust instrument named the National Bank of Detroit as trustee and transferred to it for the account of the respective trust for each child 7,500 shares of the capital stock of Parke, Davis & Company, and 2,000 shares of the capital stock of Buhl Sons Company. It was provided that these securities and the unexpended accumulations thereof were to be held for the benefit of the respective children. The trustee was empowered to manage the trust funds, collect the income, invest and reinvest, sell, mortgage, exchange and enter into compromises with respect to the property and to enter into any reorganization agreements. The trust provided: "4. Until each BENEFICIARY attains the age of twenty-one years, the TRUSTEE shall use and expend so much of the net income arising from the Trust Fund hereby created for his or her benefit, as may be reasonably necessary for his or her support, care, education and maintenance. *34 At the end of each year, until such BENEFICIARY shall reach the age of Twenty-one years, any portion of said net income not so used and expended, shall be added to the principal of such Trust Fund. "5. From and after the time when each BENEFICIARY attains the age of twenty-one years, and until he or she attains the age of thirty years, the TRUSTEE shall pay to such child the entire net income arising from the Trust Fund created for his or her benefit, in quarterly installments, or at such shorter periods as the TRUSTEE may see fit. "6. If by reason of illness, misfortune, or other emergency, the income arising from any one of such Trust Funds is insufficient in the opinion of the TRUSTEE for the adequate support, care, education and maintenance of the BENEFICIARY for whose benefit such Trust Fund is created, then the TRUSTEE is authorized to use all or any portion of the principal of such Trust Fund as it may deem necessary for such purpose. "7. As and when each of said BENEFICIARIES reaches the age of thirty years, the TRUSTEE shall pay over and transfer to such BENEFICIARY the principal of the Trust Fund created for his or her benefit, together with all unexpended or uninvested *35 accumulations thereof." It was further provided that if a beneficiary died before reaching thirty, with surviving issue, that beneficiary's interest was to go to the surviving issue, and that if any beneficiary died before reaching the age of thirty without surviving issue, that beneficiary's interest was to go to the surviving beneficiaries and the then surviving issue of any deceased beneficiary unless otherwise appointed by the beneficiary by his will. It was provided that if all the beneficiaries died before reaching the age of thirty without surviving issue, the principal of the trust fund and accumulations in the hands of the trust for the benefit of the last surviving beneficiary were to go to the devisees or legatees designated by such beneficiary, and absent a will, according to the laws of Michigan then in force. The beneficiaries were empowered to remove a trustee and appoint a successor trustee. The trustee was forbidden to deal with the property "except as a TRUSTEE" and was forbidden to purchase trust property. The instrument further provided: "14. During the lifetime of the SETTLOR the TRUSTEE shall, before making any changes in the investments in any of said TRUST *36 Funds, as such investments exist at the date hereof, submit any proposed change to the SETTLOR for his approval. * * * * *
"16. None of the children shall, prior to reaching the age of thirty years, have the right or power to sell, assign, pledge, mortgage, encumber or otherwise dispose of his or her interest in the Trust Fund created for his or her benefit and in case of the levy of any execution, attachment, garnishment or other process upon any of said Trust Funds, all payments to the child whose interest is thus sought to be reached shall cease except to the extent that the income thereof may be necessary for his or her education, maintenance and support and the remaining income not so needed shall accumulate until such process is finally released or disposed of or until such child shall reach the age of thirty years when the principal and all accumulations shall be turned over as hereinbefore provided." Petitioner at the time of the creation of the trust owned from 3 to 4 percent of the stock of Parke, Davis & Company and from 10 to 15 percent of the stock of Buhl Sons Company. Petitioner was a director of both companies. Petitioner's immediate family does not own over 20 *37 percent of the stock of Buhl Sons Company. Persons named Buhl own a majority of the stock of Buhl Sons Company. These persons include cousins and second cousins of petitioner. From time to time petitioner has been consulted by the trustee as to the investment of income which was accumulated and added to the corpus. There has never been any change in the original corpus of these trusts. During the taxable year petitioner was financially able to support his minor children and did so out of his own funds. During the minority of the beneficiaries the income from each trust has been accumulated and added to the corpus, none of it having actually been used for the support and maintenance of any minor beneficiary. The trustee was never requested by petitioner or anyone else to apply the income of the trust to the support of the children. The notice of deficiency here involved was mailed to petitioner on February 12, 1943. Thereafter on March 13, 1943, the National Bank of Detroit as trustee of these trusts filed a bill of complaint in the Circuit Court of the County of Wayne and State of Michigan, praying that the Court construe the trust instrument and instruct the trustee "as to whether *38 in its capacity as trustee of the trusts created thereby it is, upon a proper construction of the terms thereof, required or permitted to use or expend the income or principal of any of said trusts or any part thereof for the support, care, education or maintenance of any minor beneficiary of any of said trusts at any time, when and so long as the said defendant Lawrence D. Buhl is under legal obligation to support such minor beneficiary." In this bill of complaint the plaintiff trustee states that "a governmental agency has recently construed the language of said trust agreement as requiring or permitting the trustee of the trusts thereby created to use and expend all of the income of said trusts, or so much thereof as might be sufficient, for the support, care, education and maintenance of any minor beneficiaries of said trusts regardless of the ability and of the obligation of the said defendant Lawrence D. Buhl as their father to pay for the same, and regardless of the fact that said defendant Lawrence D. Buhl has, as a matter of fact, paid for the support, care, education and maintenance of such minor beneficiaries. That such construction by such governmental agency, if correct, *39 would require that this plaintiff, in its capacity as such trustee, should administer said trusts in certain respects differently from the manner in which it has administered them up to the present time." In the bill of complaint the plaintiff trustee takes the position that it is not authorized under the trust agreement to use the income or principal of any trust created thereby, or any part thereof, for the support, care, education, or maintenance of a minor beneficiary so long as petitioner is under legal obligation to make such payments. Petitioner and his children, including the three children who were minors in the year here involved, the income of whose trusts was determined by respondent as taxable to petitioner and a daughter of one of these minor children, were made parties defendant in this bill of complaint. A guardian ad litem, identical in each instance, was appointed by the State Court for the defendants who were still minors on March 13, 1943, and the individual so appointed also acted as attorney for the children of petitioner who had then attained their majority. The same party was likewise appointed by the State Court as guardian ad litem for unborn persons who *40 might become beneficiaries. On resignation of the individual so appointed as guardian ad litem a successor was appointed in his place who approved and adopted the prior answer of the guardian ad litem originally appointed. Petitioner in his answer filed in the State Court admitted all the allegations contained in the trustee's bill of complaint made in support of the position taken by the plaintiff trustee, and further alleged that he had been advised that if he actually had the right to require that the trustee use trust income for the support, care, education, and maintenance of minor trust beneficiaries, he should enforce such right. The guardian ad litem took the position that neither trust income nor principal could be used for the support of minor trust beneficiaries while petitioner was able to furnish such support, and that the trustee is without power to reimburse petitioner for any sums theretofore or thereafter expended by him for the support of minor beneficiaries. Respondent, by registered mail, was notified of the pendency of this cause in the Circuit Court for Wayne County, Michigan, and was invited to participate therein. The notice stated that the State Court proceeding *41 was instituted due to respondent's position in the matter. Respondent did not participate in the litigation in the State Court. In the State Court proceedings a report and brief of the guardian ad litem and of the defendants, children of petitioner who had attained their majority, affirmed the position taken by the plaintiff trustee in the bill of complaint that the trustee had no power or right to use the income or principal of the trust assets established for the benefit of the children for their support, maintenance, and education since the settlor, petitioner herein, had the necessary financial ability. Petitioner likewise filed a memorandum to this effect. At the hearing plaintiff trustee, petitioner, and the children who were of age were represented by counsel, while the guardian ad litem appeared on behalf of the minors whom he represented. No objection was made by anyone to the bill of complaint of the plaintiff trustee. On December 6, 1943, the Circuit Court for Wayne County, Michigan, entered a decree in the case in question, reciting that the case had come on for hearing, "* * * and thereupon it appearing to the Court now here by competent evidence produced in open *42 court that the defendant Lawrence D. Buhl, being the father of the beneficiaries named in said trust agreement, has been and is amply able to furnish the support, care, education and maintenance of said beneficiaries during their respective minorities and therefore has been and is under obligation to do so, and that he has at all times since the execution of said trust agreement amply provided for such support, care, education and maintenance, and that no part or parts of the principal or income of any of the trusts created by said trust agreement have ever been used for the support, care, education or maintenance of any beneficiary named in said trust agreement during his or her minority, and that the material allegations of said bill of complaint are true, and that plaintiff, National Bank of Detroit, a national banking association, as Trustee under agreement dated December 17, 1934, between defendant Lawrence D. Buhl as Settlor and said National Bank of Detroit as Trustee is entitled to the relief therein prayed for by it;" By the decree the Court: "* * * ORDERED, ADJUDGED AND DECREED * * * that under the proper construction of the said Trust Agreement dated December 17, 1934 *43 between defendant Lawrence D. Buhl as Settlor and plaintiff National Bank of Detroit as Trustee (a copy of which Trust Agreement is hereto attached, hereby made a part hereof and marked Exhibit I), and by virtue of the legal meaning and intent thereof said plaintiff National Bank of Detroit, as such Trustee, neither has been nor is required or permitted to expend or use in any manner whatsoever the income or principal of any trust created by said agreement or any part or parts of such income or principal for the support, care, education and maintenance of any minor child of said defendant Lawrence D. Buhl, or for any portion or item of such support, care education and maintenance, when and if said defendant Lawrence D. Buhl has been or is under legal obligation to furnish the support, care, education and maintenance of such minor child or such portion or item thereof; and that such obligation of said defendant Lawrence D. Buhl to furnish the support, care, education and maintenance of any child of his has existed and will exist when, if, and to the extent that and only when, if and to the extent that said defendant Lawrence D. Buhl is able to furnish such support, care, education and *44 maintenance, and only during the minority of such child. "IT IS FURTHER ORDERED, ADJUDGED AND DECREED that said plaintiff National Bank of Detroit, in its capacity as such trustee, is neither required nor permitted and has no authority whatsoever to reimburse said defendant Lawrence D. Buhl for any sums heretofore or hereafter expended by him for the support, care, education or maintenance of any of his minor children or of any minor beneficiary of any of said trusts." Regardless of the proceeding in the Michigan court there was never any dispute at any time between the trustee, the grantor nor any of the beneficiaries named in the trusts created by petitioner over the administration of the trust for the expending or accumulating of income nor the use of the principal thereof. This was so stated on specific questions by the judge directed to the representatives present at the hearing in the State Court. Opinion If we could accept respondent's premise that the trust established by petitioner requires or even permits the application of income to the maintenance of his minor children, the remainder of the argument might be of persuasive force. The issue would then be narrowed to *45 whether petitioner in his individual capacity had the election to force trust income into use for his own benefit, and thus was in constructive receipt of the income even though he turned his back upon it. Douglas v. Willcuts, 296 U.S. 1, 80 L. Ed. 3, 56 S. Ct. 59; Helvering v. Stuart, 317 U.S. 154, 87 L. Ed. 154, 63 S. Ct. 140; Hopkins v. Commissioner (C.C.A., 6th Cir.), 144 F.2d 683; Revenue Act of 1942, section 134. Nor in the absence of one insuperable obstacle would there necessarily be a readily available reply to the contention that when a father creates a trust for the support of his children he thereby provides the means for the discharge of that obligation and will not be viewed as under further compulsion to defray the same expenses out of his remaining funds, see Helvering v. Schweitzer, 296 U.S. 551, 80 L. Ed. 389, 56 S. Ct. 304; Helvering v. Stokes, 296 U.S. 551, 80 L. Ed. 389, 56 S. Ct. 308; a conclusion for which even stronger support can be marshalled in the case of mandatory maintenance provisions. In re Cohn's Estate, 153 Misc. 757, 276 N.Y.S. 59; Freeman v. Coit, 27 Hun 447; *46 Cleveland Clinic Foundation v. Humphrys (C.C.A., 6th Cir.), 97 F.2d 849, certiorari denied, 305 U.S. 628, 83 L. Ed. 403, 59 S. Ct. 93; Savage v. Commissioner (C.C.A., 3rd Cir.), 82 F.2d 92. The difficulty is that as between petitioner, on the one hand, and the trustee and beneficiaries on the other, this instrument has been subjected to the contrary interpretation of a State Court decree, the conclusive effect of which is urged as precluding us from an independent consideration of the subject. In that decree the court impressed upon the trust provisions a meaning which is at variance with respondent's basic assumption. The instrument as so construed eliminates not only any obligation upon the trustee to contribute to the support of the children, but even any discretion to do so as long as petitioner's financial ability remains unimpaired. Even though this decree was not in existence during the tax years in controversy, it purports to establish the meaning of the trust as drawn, and hence to prescribe its effect during the full period of its operation. Consistent with a number of cases dealing with this subject, *47 we feel compelled to treat that decree as conclusive here and as beyond any inquiry on our part as to its correctness. Helvering v. Rhodes' Estate (C.C.A., 8th Cir.), 117 F.2d 509; Masterson v. Commissioner (C.C.A., 5th Cir.), 141 F.2d 391; Eisenmenger v. Commissioner (C.C.A., 8th Cir.), 145 F.2d 103. Since as so interpreted there was no possibility that this income could be devoted to the discharge of petitioner's obligations, his liability to tax under section 167 finds no support. Elimination of this feature also deprives the argument for application of Helvering v. Clifford, 309 U.S. 331, 84 L. Ed. 788, 60 S. Ct. 554, of its chief reliance. So much we gather as to respondent's own position. At any rate there are left no such controls over principal or income as would appear to warrant subjecting petitioner to tax under the provisions of section 22 (a). David Small, 3 T.C. 1142. Finally, and for similar reasons we find it impossible to sanction the application to petitioner of the provisions of section 166. There is, it is true, a grant *48 of authority to the trustee to invade the principal "If by reason of illness, misfortune, or other emergency, the income * * * is insufficient in the opinion of the TRUSTEE for the adequate support, care, education and maintenance of the BENEFICIARY * * *." But if the income could not be expended for these purposes while the grantor's financial capacity continued, still less could the principal be so employed. The prospect that title to the corpus of the trust could under existing circumstances ever become revested in the grantor is thus effectively eliminated. And this Court is committed to the view that if the petitioner sustains his burden of showing that the designated conditions do not exist such provisions have no application. Cf. Daisy Christine Patterson, Executrix, 36 B.T.A. 407, 413; Lewis Hunt Mills, Administrator, 39 B.T.A. 798. The case of Mary E. Wenger, 42 B.T.A. 225, affirmed (C.C.A., 6th Cir.), 127 F.2d 523, certiorari denied, 317 U.S. 656, is not to the contrary. There not only were the contingencies so broad *49 that they were thought "to relieve and compensate for practically any happening adverse to her interest which might occur" but in that event the property was to return to her upon her own demand. Here the only contingency involved is the disappearance of petitioner's capacity to support his dependents, a development we are unable to say covers "practically any happening adverse" to his interest. And in that event the payments would not be made to petitioner for his own account nor would they defray any of his obligations since, as petitioner points out, his obligation would then have disappeared. We perceive no ground upon which respondent's determination may be sustained. Decision will be entered under Rule 50.