# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00458-CV

Anderson-Clayton Bros. Funeral Home, Inc.; Restland of Dallas, Inc.; Restland Funeral Home; Singing Hills Funeral Home, Inc.; Laurel Land Funeral Home of Forth Worth, Inc.; Blue Bonnet Hills Funeral Home, Inc.; and Blue Bonnet Hills Memorial Park, Inc., Appellants

**v.**

Carole Keeton Strayhorn, Comptroller of Public Accounts of the State of Texas; and Greg Abbott, Attorney General of the State of Texas, Appellees

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT NO. 9912183, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

## DISSENTING OPINION

The issue we are presented with in this controversy is, as the majority acknowledges, whether Aearnings *from out-of-state investments* made by Texas prepaid funeral benefits trusts,@ owned by Texas funeral homes, are out-of-state receipts for franchise tax apportionment purposes. *Anderson-Clayton Bros. Funeral Home v. Strayhorn*, No. 03-03-00458-CV, slip op. at 1 (Tex. App.CAustin August __, 2004, no pet. h.) (emphasis added). The majority concludes that because it is the trusts that

ultimately disburse to the funeral homes any income earned from investments, the Comptroller=s determination that the trusts are Apayors@ is reasonable, and therefore the investment earnings derived from the trusts are Texas receipts. Because I disagree with the majority=s characterization of the trusts as Apayors@ generating income from business done in Texas, I respectfully dissent.

The parties agree that the Alocation of the payor@ rule determines how the investment earnings should be apportioned or sourced and that the fundamental dispute in this case is about who should be considered the Apayors@ of the investment earnings at issue. The funeral homes contend that the relevant statute, section 171.1121(b) of the tax code, directs the Comptroller to look to the same accounting methods used to report federal income tax in determining how to apportion the investment earnings. And because the trusts are ignored for federal income tax purposes, the trusts should likewise be treated as if they did not exist for apportionment purposes. The trusts, therefore, cannot be the payors, and we must look to the investment companies= locations to determine how the investment earnings should be apportioned.

The Comptroller, on the other hand, argues that section 171.1121(b) essentially provides no guidance for determining the location of the payor. Thus, the Comptroller may use its own methods to determine the location of the payor, and those methods must be affirmed if reasonable. The majority agrees with the Comptroller=s argument and holds that the Comptroller=s method of determining the location of the payor is a reasonable one. I would hold that not only does section 171.1121(b) indeed direct the Comptroller to use federal income tax accounting methods to determine how to apportion investment

2

earnings, but also that even without resorting to federal accounting methods, the trusts are not Apayors@ for purposes of the location of the payor rule.

**Section 171.1121(b)**

The Comptroller argues, and the majority agrees, that section 171.1121(b) Amerely requires corporations to apply the same accounting method (*e.g.*, the installment method, the percentage of completion method) when calculating both reportable federal taxable income and the >gross receipts= it uses in the apportionment factor of section 171.106.@ *Id.*, slip op. at 15. This construction, however, is flawed in two respects: (1) it renders subsection (b) of section 171.1121 redundant of subsection (a) of that same statute, and (2) it ignores the meaning of the term Aapportion.@

The majority maintains that subsection (b) does not address Asourcing of receipts@ but rather is intended to clarify that the method used to determine taxable earned surplus should be the same as the one used to determine gross receipts. *Id.*, slip op. at 15-16. But subsection (a) of the statute already directs taxpayers to do so. It provides that gross receipts mean all revenue reportable by a corporation on its federal tax return. Tex. Tax Code Ann. ' 171.1121(a) (West 2002). And taxable earned surplus is determined by adjusting the amount of a corporate taxpayer=s reportable federal taxable income. *Id.* ' 171.110(a) (West Supp. 2004). Gross receipts do not include revenues not included in taxable earned surplus. *Id.* ' 171.1121(a). In other words, gross receipts must be calculated consistently with taxable earned surplus. This is spelled out in subsection (a), not subsection (b).

Subsection (b), on the other hand, speaks specifically to Aapportionment,@ not to calculating gross receipts consistently with taxable earned surplus. Apportion is defined in the taxation context as A[t]he

3

act of allocating or *attributing* moneys or expenses in a given way, as when a taxpayer allocates part of profits to a particular tax year or part of the use of a personal asset to a business.@ *Black=s Law Dictionary* 96-97 (7th ed. 1999) (emphasis added). Attribute is defined as A2. to explain as caused or brought about by: regard as occurring in consequence of or on account of; . . . 3. to regard as possessed, owned, originated, characterized, or described as indicated . . . .@ *Webster=s Third New International Dictionary* 142 (1961). This definition is consistent with the Alocation of the payor@ rule; that is, in order to determine to whom the investment earnings should be attributed and accordingly how they should be apportioned, we should first determine who Acaused@ or Abrought about@ those investment earnings. And according to subsection (b) of section 171.1121, we should rely on federal accounting methods to do so.

There is nothing in section 171.1121 or elsewhere in the Franchise Tax Act that supports the Comptroller=s contention that the term Aapportion@ as used in section 171.1121(b) means to calculate gross receipts consistently with taxable earned surplus. In fact, the legislature used Aapportion@ throughout the Act to refer to the allocation or attribution of receipts to Texas versus elsewhere and to particular entities. *See, e.g.*, Tex. Tax Code Ann. '' 171.1032, .1051, .106 (West Supp. 2004). Even within section 171.1121, the legislature uses Aapportion@ in subsection (e) to refer to the assignment of a corporation=s share of a partnership=s gross receipts to that corporation. *Id.* ' 171.1121(e). We should not construe subsection (b) any differently.

**Federal Accounting Methods**

It is without dispute that funeral trusts are Agrantor@ trusts.[1] The Internal Revenue Code

4

requires the grantor or owner of any portion of a grantor trust to include in his taxable income any items of income attributable to his portion of the trust. I.R.C. ' 671 (West 2002); Treas. Reg. ' 1.671-2 (2003). Because the funeral homes established the trust accounts, they are considered the grantors or settlors of the trusts. *Hopkins v. Commissioner of Internal Revenue*, 144 F.2d 683, 690 (6th Cir. 1944). Thus, they must report as taxable income any income attributable to the portion of the trusts that they own.

Payments deposited into the trust accounts, or the trust Acorpus,@ are refundable; that is, the purchaser of the pre-paid funeral services may revoke the corpus trust. Thus, the funeral homes cannot withdraw any contractual payments from the trusts until after the purchaser dies, the funeral service is completed, and certain required forms are presented to the depositary. Accordingly, the funeral homes do not recognize any payments deposited in the trust accounts as taxable income until after the purchaser has died and the funeral services have been provided. These contractual payments, however, yield Aearnings@ once they have been invested in marketable securities by the trusts. Earnings are Athe amount in an account in excess of the amount paid by the purchaser of a prepaid funeral benefits contract that is deposited in the account . . . including accrued interest, accrued income, and enhanced or increased value.@ Tex. Fin. Code Ann. ' 154.002(4) (West Supp. 2004). These earnings are non-refundable and thus irrevocable by the purchaser; even if the purchaser revokes the funeral services agreement, he may recover the amounts paid under the contract, but not the earnings or enhanced value of those payments. The funeral homes are therefore treated as the grantors or owners of the trusts and recognize the earnings as taxable income on an annual basis. This is so even though the funeral homes typically may not withdraw those earnings from the trust accounts until after the funeral services are delivered or the corpus is returned.

Income received by a grantor trust is treated as if it had been received directly by the grantor or owner.  The funeral homes, for example, must treat investment earnings on the trust corpus as though they received the earnings directly from the corporations that pay them into the trust accounts, regardless of when the funeral homes actually withdraw the earnings from those trust accounts.  In other words, income earned on investments held in a grantor trust is treated as Aflowing through@ the trust as if the trust did not exist.  If we apply this federal accounting method, as section 171.1121(b) of the tax code requires us to do, the result is that the grantor trust must be treated as a Aflow-through@ entity rather than as a payor of investment proceeds.  The trusts never own the investment proceeds; rather the earnings pass directly from the paying corporations to the owner or grantor of the trust, in this case the funeral homes.  Thus, those corporations are the Apayors@ for purposes of the location of the payor rule, not the flow-through trusts, and we should look to the location of those paying corporations to determine how to apportion the earnings, instead of looking to the location of the trusts.

**Business in Texas**

Even if I were to agree that the tax code does not require the Comptroller to apply the federal method of treating grantor trusts as flow-through trusts rather than as payors, as the majority holds, I would still hold that the trusts in this case cannot be characterized as the payors for purposes of the location of the payor rule. The trusts do not generate the investment earnings. Nor do they have any discretion as to how much of those earnings are to be paid to the trust grantors or when those earnings should be paid. Thus, I would hold that the trusts are not payors and the investment earnings are not a result of business done in this state.

Finally, to the extent there is any doubt concerning the construction of section 171.1121(b), I would hold that the provision is ambiguous and apply the rule that courts strictly construe the applicability of taxation against the taxing authority and in the taxpayer=s favor. *See Calvert v. Texas Pipe Line Co.*, 517 S.W.2d 777, 781 (Tex. 1974); *Texas Utils. Elec. Co. v. Sharp*, 962 S.W.2d 723, 726 n.4 (Tex. App.CAustin 1998, pet. denied).

In sum, I would hold that the trusts are not payors for the purposes of the location of the payor rule. Thus, I would look to the location of the paying corporations to determine if investment earnings should be apportioned as receipts from business done in this state. Accordingly, I would sustain the funeral homes= issue and reverse the district court=s judgment.

7

David Puryear, Justice

Before Justices Kidd, Puryear and Pemberton

Filed:   August 12, 2004