Zimmerman, J.
 

 A decision on the principal question in this case rests upon the interpretation and construction of the trust agreement involved and the conduct of Thomas H. White and The Cleveland Trust Company, as trustee, in relation thereto. We must determine whether there was a complete and effective settlement in trust of the real and personal property conveyed and transferred, as the appellees contend, or whether the situation discloses such retention of dominion over the property and control of the trustee by Mr. White as to constitute a mere agency in the trust company, ending at his death, as is maintained by the appellants.
 

 
 *5
 
 This leads us primarily to an examination of the trust agreement. By its terms, a large amount of real and personal property, described in schedules attached to the agreement, was conveyed and transferred to the trust company, to be held, managed and controlled upon the trusts and for the uses and purposes designated. The trustee was given broad powers to invest and reinvest, and unrestricted power to manage all property held as if the absolute owner thereof. It was further given the right to make advances or to borrow money to effect the payments of principal, as hereinafter directed. Paragraphs 10 and 20 of the agreement, taken together, would indicate an obligation on the part of the trustee to pay the donor’s debts at his decease.
 

 The voting, selling and disposal of stock in The White Sewing Machine Company and The White Company, for a stipulated time after the donor’s death, was made dependent upon the agreement of certain individuals.
 

 Under the caption “Rights Reserved by Donor” it was provided that the entire net income derived from the trust estate should be paid to the donor during his lifetime, with such further amounts from the principal as the trustee should deem necessary for his proper maintenance, support, etc., absolute discretion being vested in the trustee to determine what might be necessary and proper for such purposes. The donor further reserved the free use and enjoyment for his life of the real estate conveyed, relieving the trustee from the payment of taxes and insurance thereon, unless such payments were requested. It was also stipulated that the trustee, at the donor’s request, should execute any instruments necessary to vest in him the voting powers on the stocks held under the trust. Provision was made that whenever practicable the trustee should endeavor to secure the donor’s written approval to
 
 *6
 
 the sales of property and securities and to investments and reinvestments, and that during the donor’s life no sale of any shares of stock in The White Company or The White Sewing Machine Company should be made without first obtaining the donor’s written approval thereto. All responsibility for making tax returns on the trust property was assumed by the donor as long as he lived. He reserved the right at any time,
 
 with the approval of the Board of Directors of The Cleveland Trust Company,
 
 to revoke the trust, in whole or in part, and to modify the terms of the trust agreement.
 

 Thomas H. White survived the execution of the trust agreement and will by some nine months and twenty days, without having attempted to exercise any of the reserved powers as to revocation, modification or withdrawal of principal.
 

 It appears that deeds for the real estate covered by the trust agreement were executed and delivered to the trustee, but were recorded subsequent to Mr. White’s death. The enumerated stock certificates were also delivered to the trustee, endorsed for transfer, but were not transferred on the books of the different issuing corporations until after Mr. White died. All dividends on such stock were paid to and received by Mr. White while he lived.
 

 Subject to certain well known restrictions, one can dispose of his own property as he pleases. If he elects to set up a trust
 
 inter vivos
 
 he may do so, and when the settlor, under a trust agreement,' transfers and delivers his property to a trustee with the intention of passing title, and designated beneficiaries take immediate vested interests in such property, the trust is perfected, notwithstanding the settlor may reserve various rights and powers in relation to the trust estate.
 

 By the weight of authority, a trust, otherwise effec
 
 *7
 
 tive, is not rendered nugatory because the settlor reserves to himself the following rights and powers: (1) The use of the property and the income therefrom for life; (2) the supervision and direction of investments and reinvestments; (3) the amendment or modification of the trust agreement; (4) the revocation of the trust in whole or in part; (5) the consumption of principal.
 

 However, there is appreciable dissent from the last proposition. 73 A. L. R., annotation at page 218
 
 et seq.
 
 These reserved powers are generally regarded as conditions subsequent, with no more than curtailing or divesting significance. 65 Corpus Juris, 274, Section 56; 73 A. L. R., annotation beginning at page 209; 26 Ruling Case Law, 1206, Section 48; 1 Perry on Trusts and Trustees (7 Ed.), 136, Section 104; 1 Bogert on Trusts and Trustees, 337, Section 103
 
 et
 
 seq.; 43 Harvard Law Review, 521, at 526
 
 et
 
 seq.; 1 Restatement of the Law of Trusts, 174, Section 57 (1);
 
 Cramer, Admr.,
 
 v.
 
 Hartford-Connecticut Trust Co.,
 
 110 Conn., 22, 147 A., 139, 73 A. L. R., 201;
 
 Goodrich
 
 v.
 
 City Natl. Bank & Trust Co.,
 
 270 Mich., 222, 258 N. W., 253;
 
 Dmis, Admx.,
 
 v.
 
 Rossi,
 
 326 Mo., 911, 34 S. W. (2d), 8;
 
 Pinckney
 
 v.
 
 City Bank Farmers Trust Co.,
 
 249 App. Div., 375, 292 N. Y. Supp., 835. Compare
 
 Gurnett
 
 v.
 
 Mutual Life Ins. Co.,
 
 356 Ill., 612, 191 N. E., 250, 254;
 
 O’Hara, Admx.,
 
 v.
 
 O’Hara,
 
 291 Mass., 75, 195 N. E., 909, 911;
 
 In re Dolan’s Estate,
 
 279 Pa., 582, 590, 124 A., 176, 178, 49 A. L. R., 856, 863.
 

 When a settlor creates an effective trust in his lifetime, the disposition is not testamentary because there is to be no application of the property to charitable or other purposes until after his death. 1 Restatement of the Law of Trusts, 174, Section 57 (1); 2 Restatement of the Law of Trusts, 1123, Section 361 (1).
 

 One who constructs a valid present trust, providing for a life estate in himself with a further trust in favor
 
 *8
 
 of other beneficiaries on his death, grants to such beneficiaries an immediate equitable title in remainder, and the arrangement is not of a testamentary nature. On the other hand, a will is quite different, in that it has no effect until the testator’s death and vests no interests in the beneficiaries until the happening of that event. 1 Perry on Trusts (7 Ed.), 119, Section 97;
 
 Cramer, Admr.,
 
 v.
 
 Hartford - Connecticut Trust Co., supra; Pinckney
 
 v.
 
 City Bank Farmers Trust Co., supra;
 
 73 A. L. R., annotation at page 213.
 

 Of course Section 10504-5, General Code (formerly Section 10504, General Code), rendering void a devise or bequest made to charity by a will executed within one year of the testator’s death, under stated conditions, has no reference to a good and sufficient charitable trust
 
 in praesenti.
 

 It is often remarked that a gift
 
 inter vivos
 
 and a voluntary trust are very nearly identical. This is not strictly true. A gift
 
 inter vivos
 
 bestows on the beneficiary both the legal and equitable title, while a trust conveys the equitable title only, the legal title resting in a trustee. 20 Ohio Jurisprudence, 13, Section 10.
 

 A power of revocation accompanying delivery would make a gift
 
 inter vivos
 
 a nullity, for dominion and control over the property would thereby be retained by the donor. But, according to the decisions, a settlor who executes an instrument creating’ a trust may successfully divest himself of title and transfer it to others, though reserving the power of revocation.
 
 Burnet, Commr. of Internal Revenue,
 
 v.
 
 Guggenheim,
 
 288 U. S., 280, 284, 77 L. Ed., 748, 750, 53 S. Ct., 369.
 

 On itá face, the trust agreement in controversy expresses the intent to formulate a complete trust at once. It ostensibly conveys and transfers title to described property to the trustee. There is no dispute but that deeds, stock certificates and bonds, representing the property, were placed in the hands of the
 
 *9
 
 trustee. It purportedly gives to beneficiaries immediate vested interests. Tbe exercise of important reserved powers and rights is subject to the approval and discretion of the trustee.
 

 Upon a close scrutiny of the instrument, in connection with a study of numerous authorities on the subject, a majority of the members of this court is of the opinion that Thomas H. White succeeded in creating an effective trust, which should be sustained; the reserved powers, qualified as they were, not being sufficiently drastic to destroy the trust, or to reduce the trustee to a mere agent of the settlor. See 1 Restatement of the Law of Trusts, 175, Section 57 (2).
 

 When the exercise of reserved powers is made dependent upon the acquiescence of a trustee, other than the settlor himself, the procurement of such acquiescence is necessary to enable the settlor to act; it is not just a formal requirement without meaning. 2 Restatement of the Law of Trusts, 995, Section 330 (1);
 
 Downs
 
 v.
 
 Security Trust Co.,
 
 175 Ky., 789, 194 S. W., 1041;
 
 Richardson et al., Trustees,
 
 v.
 
 Stephenson,
 
 193 Wis., 89, 213 N. W., 673. Compare,
 
 Reinecke, Collector,
 
 v.
 
 Northern Trust Co.,
 
 278 U. S., 339, 346, 73 L. Ed., 410, 414, 49 S. Ct., 123, 66 A. L. R., 397, 402.
 

 In a case where any doubt may exist as to the honesty of purpose of a settlor in erecting an apparent trust structure, such doubt should be resolved in favor of a right intention. An interpretation is favored which assumes the performance of an act with a right rather than a wrong design.
 
 Talbot
 
 v.
 
 Talbot,
 
 32 R. I., 72, 94, 78 A., 535, 544, Ann. Cas. 1912C, 1221;
 
 Blackstone Canal Natl. Bank
 
 v.
 
 Oast, Admr.,
 
 45 R. I., 218, 121 A., 223, 225.
 

 It is evident that cases of the type now under consideration must be decided on their particular facts. Where the settlor retains powers which in their cumulative effect amount to ownership of the trust estate
 
 *10
 
 with, such control over the administrative functions of the trustee as to make of him simply the settlor’s representative, no trust is established and the courts have so declared.
 

 This opinion cannot be brought to a close without a discussion of the Ohio cases of
 
 Worthington, Admr., v. Redkey, Exr.,
 
 86 Ohio St., 128, 99 N. E., 211, and
 
 Union Trust Co.
 
 v.
 
 Hawkins, Admr.,
 
 121 Ohio St., 159, 167 N. E., 389, 73 A. L. R., 190.
 

 In the
 
 Redkey case,
 
 one Worthington, in contemplation of death and being desirous of making certain charitable gifts, which could not be accomplished by will unless he survived for one year from the date of its execution, delivered to one Redkey his check for some six thousand dollars, made payable to “M. Red-key, trustee in trust for Jos. Worthington.” A trust instrument was also executed in which Redkey was appointed trustee to receive and hold the money and after Worthington’s death to pay over various amounts to several named institutions. This instrument reserved to Worthington the right to revoke Redkey’s appointment. Redkey survived Worthington and the appointment was not revoked. In holding the purported trust invalid, the court took the position, under the particular facts, that the donor did not intend that title to the fund should pass from himself as long as he lived, and Redkey was but an agent of the donor, whose agency was revoked by his principal’s death. True, the opinion stresses the power of revocation reserved by Worthington as indicating no relinquishment of dominion over the fund, but the case can hardly be relied upon as authority for the proposition that the retention of a power of revocation is incompatible with the creation of an effective trust.
 

 In the
 
 Hawkins case,
 
 the settlor executed two instruments, attempting to create a trust in personalty for her benefit while she lived, and providing that upon
 
 *11
 
 her death the trust should terminate and the property be distributed among three of her children in a specified way. Power of revocation was reserved by the settlor. She also assumed payment of taxes on the trust property, and reserved the right to approve sales, leases and investments to be made by the trustee. Upon a rehearing of the case, the validity of the trust was sustained by the court on the basis that Section 8617, General Code, as amended in 1921, authorizes a trust agreement making a conveyance or transfer of property to take effect at the death of the creator of the trust, and permits it to contain the reserved powers of alteration, amendment and revocation.
 

 However, certain language in the opinion in the
 
 Hawkins case,
 
 unnecessary to a decision on the ground adopted by the court, is to the effect that in the absence of a statute permitting it, a valid trust cannot be recognized where the settlor reserves the right of revocation. Such expression is opposed to the rule announced by all the courts of last resort in other jurisdictions which have spoken on the subject, and can not be regarded as controlling in Ohio, irrespective of Section 8617, General Code. 40 Ohio Jurisprudence, 178, Section 39; 73 A. L. R., annotation at page 214; 3 Cincinnati Law Review, 361
 
 et seq.;
 
 43 Harvard Law Review, 521, at pages 533 and 534.
 

 As to the minor questions involved in the present case, we can find no fault with the judgment of the Court of Appeals. It stands to reason that the trust agreement could affect only the property transferred and delivered by Thomas H. White to the trustee. Consequently, the property representing the sum of $104,-690.73, which came into the possession of the trustee after Mr. White’s death could not be put directly under the trust agreement. The Court of Appeals properly placed this amount under the will of Thomas
 
 *12
 
 H. White and made a correct order as to its disposition.
 

 Considerations outside the issues raised should play no part in a decision of this case. However, we recognize in Thomas H. White an individual of broad outlook and sympathies, who, having acquired a substantial fortune, wished to devote it to the general benefit of the community where it had been accumulated. This he undertook to do in his lifetime by transferring his property to The Cleveland Trust Company, under the mandate to execute the philanthropic plan conceived by him and expressed in the trust agreement before us.
 

 We further note that for twenty years after the execution of the trust agreement and the death of Mr. White, his heirs, for whom provision had been made by the instrument, either actively or passively assented to the operation of the trust.
 

 Believing that the judgment of the Court of Appeals should be affirmed, it is so ordered.
 

 Judgment affirmed.
 

 Matthias, Day, Williams and Gorman, JJ., concur. Myers, J., dissents.