Turner, J.,
 

 dissenting. We dissent from the final judgment in this case. The vital paragraphs of the syllabus are not applicable to the facts of this ease.
 

 The facts in this case fail to sustain either:
 

 (a) The validity of the living trust, or
 

 (b) The validity of the delegation of a conditional power of appointment which could become effective as a delegation only after the death of the donor of the power.
 

 As to the validity of the living trust, the majority
 
 *71
 
 opinion excuses its infirmities by the lapse of time and the absence of objection. Unless a valid trust was created, no estate present or future was created and even a legally designated donee of a power of appointment would have nothing to appoint.
 

 As to the validity of the delegation of the power of appointment, it is said in the majority opinion: “The fact that a power of appointment is made in a trust deed, to be exercised after the donor’s death, does not make it testamentary or void.” We agree with that statement as an abstract proposition of law, but it does not meet the facts of the instant case. Had a
 
 present
 
 power of appointment been delegated by the trust deed, the foregoing language in respect of the delegation of the power would be appropriate, but no power of appointment
 
 in praesenti
 
 was created or intended. Judge Conner reserved for his lifetime the right to name the ultimate beneficiary;
 
 but if, during his lifetime, he did not exercise such right, he provided that then, but not until then (which necessarily means upon his death), his widow would become the donee of the power.
 
 This is clearly a testamentary act.
 

 Of course, a donee of a power properly delegated may act after the death of the donor. But to avoid the testamentary feature of such act, the delegation must be completed during the lifetime of the donor.
 

 While a will is ambulatory in respect of its effective date, a trust deed is not. A will becomes effective at the testator’s death, while a living trust, if effective at all, becomes effective upon the execution of the trust agreement and the delivery to the trustee of the property. If it is intended in the trust agreement to delegate a power of appointment, such power must then and there be an accomplished fact, and not one to come into being after the death of the donor.
 

 To bring out more clearly the grounds of our dissent, we find it necessary to restate the pertinent facts.
 

 On June 22, 1910, Judge John S. Conner executed
 
 *72
 
 a written instrument whereby the title to certain personal property was transferred to appellee trust company in trust. This instrument was not executed in* accordance with the Statute of Wills.
 

 Appellee trust company brought the agreement between itself and Judge Conner into court and asked instruction with respect to the administration and distribution of the property placed in its hands under such agreement. In order to give such instruction, the court must necessarily examine everything within the four corners of such instrument, and particularly determine the validity of the alleged trust settlement as well as the validity of the power of appointment. If a mere agency was created by such written instrument, a court may not now construe such instrument as creating a trust. Of course, a mere agency creates a trust relationship, but not a living trust. If the attempted power of appointment was a testamentary act, the court may not now hold otherwise. The lapse of time since the death of Judge Conner in no wise affects this situation. The trust company has had continuous possession of the property and is in court asking instruction as to the disposition thereof. Laches is not involved. It was specifically provided in the instrument of June 22, 1910, that if the daughter, or anyone on her behalf, took any step or made any effort to contest, interfere with or modify such instrument the daughter should forfeit her annuity.
 

 In 1 Restatement of Trusts, 175, Section 57, it is said: “Where the settlor transfers property in trust and reserves not only a beneficial life estate and a power to revoke and modify the trust but also such power to control the trustee as to the details of the administration of the trust that the trustee is the agent of the settlor, the disposition
 
 so far as it is intended to tahe effect after his death
 
 is testamentary and is invalid unless the requirements of the statutes relating
 
 *73
 
 to the validity of wills are complied with.” (Italics ours.)
 

 In the fourth paragraph of the syllabus in the case of
 
 Cleveland Trust Co., Trustee,
 
 v.
 
 White,
 
 134 Ohio St., 1, 15 N. E. (2d), 627, 118 A. L. R., 475, this court held: “No valid trust is established when the settlor reserves powers which in their cumulative effect amount to ownership of the trust estate with such control over the administrative functions of the trustee as to make of him simply the settlor’s agent or representative.” In our opinion, this is a correct statement of the rule to be applied here.
 

 The following provisions of the agreement between Judge Conner and appellee trust company cover all the powers of the trust company during the life of Judge Conner and show the arrangement to be one of mere agency, with the agent holding the naked title to the property but lacking the dominion necessary to create a true living trust. In other words, in this instrument there will be found no power respecting the supervision, management or control of the property in question that is not by .its express terms absolutely reserved to himself by the settlor:
 

 “1st. During the lifetime of said John S. Conner said trust and safe deposit company shall hold all the above-named securities, hereby transferred to it, and the investments and reinvestments of the same, receive and collect all the income therefrom, and pay over to said John S. Conner, at the end of each month, all the net income therefrom; and hold, manage, sell, invest and reinvest said securities, and the reinvestments of same
 
 as said John S. Conner may, from time to time, in writing direct;
 
 and from time to time, re-transfer and deliver back to said John S. Conner any portion of said securities or said reinvestments
 
 as he, the said John 8. Conner, may, in writing, direct;
 
 and should said John S. Conner at any time, during his lifetime,
 
 *74
 
 desire to terminate this trust, and so notifies said trust and safe deposit company in writing, then said company, at once, shall re-transfer and deliver back to said Conner all of said securities and reinvestments, as well as net income therefrom, then in its hands.
 

 “2nd. After the death of said John S. Conner said trust shall at once become absolute * * (Italics ours.)
 

 As to the ultimate beneficiary of the fund, it was provided:
 

 “3rd. After the death of my wife and also of my daughter (if my daughter shares in the income as aforesaid), then this whole trust shall at once cease and terminate; and said trust company shall then transfer, make over, deliver and pay over all the securities of every kind then in its hands, and the accrued and collected net income thereon, to such institution, charity, corporation, individual, or individuals, as I, in my lifetime, may in writing direct, which writing shall be addressed to and delivered to said trust company; or, if I should die, before executing and delivering said writing then (having full confidence in the judgment of my wife, and knowing her full sympathy with my views in the matter), to such institution, charity, corporation, individual, or individuals, as my said wife shall, before her death, designate in a writing addressed to and delivered to said trust company.
 

 “But in case both I and my wife should die before having so designated in writing the beneficiary of said property, then said trust company shall assign, transfer, make over, deliver, and pay over all. of said property to Dartmouth College of Hanover, New Hampshire, the same to be forever kept separate from' the other funds and property of said college, and to be known and designated as the ‘John Sanborn Conner Fund,
 
 ’
 
 the income alone ever to be used, and that only
 
 *75
 
 in assisting worthy students to obtain their education at said college; and the students receiving such aid shall, or shall not repay the same, as soon as they reasonably are able so to do, as the college authorities in each case may determine.”
 

 To create a valid gift
 
 inter
 
 vivos, there must be a delivery
 
 in praesenti,
 
 or during the life of the donor, which takes effect immediately. The delivery must be complete and unconditional. 20 Ohio Jurisprudence, 19, 25.
 

 While the mere fact that the settlor of a trust reserves to himself a beneficial life estate and/or the power to revoke the trust in whole or in part does not make a trust testamentary in character, yet where the settlor reserves powers which in their cumulative effect amount to ownership of the trust estate the trustee is simply the settlor’s agent or representative and such property in the hands of such trustee or agent is subject to administration through the Probate Court after the death of the settlor. The instrument of June 22, 1910, had the effect of making the trust company a mere depository or custodian.
 

 The privilege to receive any property of a deceased person depends entirely upon statutory authorization.
 

 The creation of a power of appointment to take effect only after the death of the settlor is testamentary and in such case the statute governing the execution of wills must be followed.
 

 In the instant case, there was no such relinquishment of dominion over the property as would support a valid gift
 
 inter vivos.
 
 The entire management of the trust estate remained under the sole direction of the settlor; the trustee was authorized to do nothing but hold the naked title and collect and turn over the income to the settlor. When sales or reinvestments were to be made, these were not to be made by the trustee, but by Judge Conner himself. For instance,
 
 *76
 
 exhibit B contains the following recital by Judge Conner:
 

 “Having heretofore withdrawn .from the operation of my trust deed of June 22, 1910, one hundred and thirty five (135) shares of The Merchants & Manufacturers Fire Insurance Company by reason of said company having gone into liquidation, and having invested the proceeds of said stock with additional funds of mine in ninety five (95) shares of fifty dollars ($50) each of the common stock of Dayton & Michigan Railroad Company:
 

 “And also having heretofore withdrawn from the operation of said trust deed twenty-seven (27) shares of the preferred
 
 6%
 
 stock of The Gribson Art Company, by reason of said company having made a new issue of preferred 8% stock to take the place of the old stock, and such new stock running for additional years: and having so exchanged said 27 shares of old stock for an equal amount of the new stock, and in addition purchased three (3) additional shares, making in all thirty (30) shares of said new preferred 8% stock of said The Gribson Art Company, which I wish to be covered by said trust deed:
 

 “And also having ten (10) shares of the 4% preferred stock of The Cincinnati Inter-Terminal Railroad Company (guaranteed by The Chesapeake & Ohio Railway Company, The Louisville & Nashville Railroad Company and The Covington & Cincinnati Elevated Railroad & Transfer & Bridge Company), which I wish to be covered by said trust deed:
 

 “And also desiring that the aforesaid stocks should go under said trust deed and replace the value of the old stocks withdrawn and also to be supplementary to and additional to the stocks now in said trust * * * .”
 

 The attempted disposition of this property did not amount to a gift
 
 inter
 
 vivos, but was an attempt to make a testamentary disposition by a method which
 
 *77
 
 did not comply with, any statutory authorization. There was no' delivery to the trustee for the benefit of a named ultimate beneficiary. The naming of Dartmouth College in the instrument of June 22, 1910, was conditional, and could not become absolute until the death not only of the settlor but of the settlor’s wife. If both the settlor and his wife died without having named the beneficiary, then Dartmouth was to be the beneficiary. This was clearly testamentary and to be valid, the instrument must have been executed in accordance with the law applicable to the execution of a will.
 

 The wife’s power of appointment under the instrument of June 22, 1910, as well as under the letter of December 24, 1910 (both relied upon by the court below in its decree), was not to become effective until after the death of the settlor.
 

 In 1 Restatement of Law of Trusts, 167, Section 56, is to be found the following proposition: “Where the owner of property purports to create a trust
 
 inter vivos
 
 but no interest passes to the beneficiary before the death of the settlor, the intended trust is a testamentary trust and is invalid unless the requirements of the statutes relating to the validity of wills are complied with.”
 

 In the comment on the foregoing proposition, it is said, at page 168: “
 
 a.
 
 Where the settlor makes a conveyance of property in trust, the intended trust may fail on the ground that it is not created prior to his death. This is the case where the conveyance is ineffective to transfer the property during his lifetime,
 
 or where although the conveyance is effective to transfer the property the beneficiary is not designated during his
 
 lifetime.” (Italics ours.)
 

 At page 169, still commenting on the proposition laid down in Section 56, it is said: “So also, if the owner of property delivers it or delivers a deed of conveyance
 
 *78
 
 to the intended trustee, but he manifests an intention that the conveyance shall not be effective until his death, the disposition is testamentary.”
 

 At page 171, it is said: “Where the settlor makes a conveyance of property in trust, the intended trust may fail, although the conveyance is effective to transfer the property during his lifetime,
 
 because the beneficiary is not properly designated during his lifetime
 
 * * *.
 
 Thus, if the owner of property transfers it to another person in trust for such person as the transferor may designate by an act which is
 
 testamentary,
 
 the intended trust is testamentary and is invalid unless the requirements of the Statute of Wills are complied with.”
 
 (Italics ours.)
 

 The distinction that is sought to be made is illustrated by the following language of the Restatement at page 172: “If by the terms of the trust
 
 an interest passes to the beneficiary during the life of the settlor,
 
 although the interest does not take effect in enjoyment or possession before the death of the settlor, the trust is not a testamentary trust * * (Italics ours.)
 

 It is not to be inferred that a gift
 
 in praesenti
 
 may not be made to a trustee accompanied by a present' power of appointment to be exercised by a third party after the donor’s death. We do not have this situation in the instant case. It is our view that the gift was to become effective only upon the death of the settlor and was dependent upon the exercise or non-exercise of a power of appointment which was to be effective in a third party only after the death of the donor.
 

 As said in 1 Restatement of Law of Trusts, 120, Section 37: “The settlor of a trust can reserve to himself any power which he desires with respect to the property, if the power is not illegal * * *, and the reservation of the power will not of itself make the trust invalid.
 
 Such a trust may, however, be testamentary, and therefore subject to the requirements of the Statute of Wills.”
 
 (Italics ours.)
 

 
 *79
 
 Counsel for Dartmouth College admit that the attempted trust was invalid, but join counsel for Berea College in claiming that no one has the right to raise that question now. The position of counsel for Dartmouth is set forth in the following sentence in their brief: “However, we do believe that for the purposes of this case — since no one contends otherwise — the court must assume, without necessarily deciding, that so much of the trust as is not attacked is valid. The only part of the trust that is attacked is the power.” On this same subject counsel for Berea College say: “Dartmouth now concedes that the trust may be invalid, but agrees with us that no one has the right to raise that question. * * * Because Dartmouth contends that the power of appointment is invalid, that is no reason why the court should pass on the validity of the trust. ’ ’
 

 We cannot agree with this position of counsel for the reason that if there was no valid trust, whether there was a valid power of appointment would be moot. If there was no valid delegation of a power of appointment, then necessarily the validity of the trust would have to be determined to give the instructions asked in the petition. Besides, as we have pointed out, the attempted delegation of a power of appointment was a testamentary act and void for lack of compliance with statutes.
 

 It is our conclusion that no valid living trust was created by the instrument dated June 22, 1910; that no valid power of appointment was made by that instrument; and that the property in the hands of the trust company should be administered through the Probate Court of Hamilton county as a part of the estate of John S. Conner, deceased.
 

 The conclusions here reached make it unnecessary to discuss other interesting questions argued by counsel on the assumption that a valid trust and a valid
 
 *80
 
 appointment were created by the instrument dated June
 
 22,
 
 1910.
 

 The reference to this trust in Judge Conner’s will is not sufficient to require a discussion of the doctrine of incorporation by reference.
 

 The decree of the Court of Appeals should be reversed and the cause remanded to that court for further proceedings.
 

 Weygandt, C. J., and Matthias, J., concur in the foregoing dissenting opinion.