Krueger, Appellant, *v.* The Central Trust Co., Trustee, et al., Appellees.[*]

(No. 8102—Decided July 23, 1956.)

*Mr. Kyle F. Brooks, Mr. Smith H. Tyler, Jr.,* and *Mr. David P. Faulkner,* for appellant.

*Mr. Oliver M. Dock* and *Messrs. Paxton & Seasongood,* for appellee The Central Trust Company, trustee and executor.

*Mr. Frank R. Gusweiler,* for appellee General Protestant Orphan Home.

*Mr. Ernest W. Stockmeier,* for appellee First Reformed Church.

*Mr. Wm. R. Warner, Jr.,* for appellee Monfort Heights Community Methodist Church.

Matthews, J.  This is an action in which the plaintiff seeks to have the court declare null and void a certain trust instrument executed by her mother, Clara K. Nebel, on May 31, 1951, whereby she designated the defendant, The Central Trust Company, trustee of certain personal and real property which she then and thereafter transferred to it.  Clara K. Nebel died on December 6, 1954.  The defendants are The Central Trust Company, as trustee under the aforesaid trust instrument and as executor of Clara K. Nebel's will, and certain, but not all, beneficiaries under the trust agreement.

The action was filed in the Court of Common Pleas of Hamilton County, Ohio, and comes into this court on appeal on questions of law and fact.

By stipulation, the case was submitted to this court on the

---

[*]Motion to certify the record overruled, December 12, 1956.

pleadings, a transcript of the evidence introduced and offered in the Common Pleas Court and the arguments and briefs of counsel.

Ferd Nebel died on April 6, 1950, leaving a will in which he named his wife, Clara K. Nebel, executrix and principal beneficiary of an estate of about $750,000. The will was admitted to probate, and she accepted the appointment as executrix and proceeded with the administration of the estate with the assistance of the attorney who had drafted the will and who had been her husband's attorney for many years. The administration involved the sale of stock of The Nebel Machine Tool Company, in which stock a large part of the wealth of Ferd Nebel was invested. As it was apparently a nonlisted stock, a prospective purchaser had to be found and a price negotiated, but by the end of 1950 the stock had been sold and the administration of the estate completed. Clara K. Nebel thereupon became the owner of this large estate and faced with the necessity of determining how she would handle it. It was then that she sought the advice of the defendant and arranged for the execution of this trust agreement.

By the first provision of the trust agreement, Clara K. Nebel transfers and conveys to The Central Trust Company a described amount of cash, stock, bonds and other securities listed in an exhibit attached to the trust agreement. By subsequent provision, the transferee is required to hold the property so transferred to it in trust, to pay the entire net income to the grantor for and during her life, and, upon her death, to pay from the corpus of the trust fund $5,000 to Hilda Ginter, $5,000 to Amelia Kiessling, $5,000 to George Sand, and $5,000 to the then living children of Louise Foertsch, all relatives by blood or marriage of Clara K. Nebel. She provided also for the payment of $2,000 to Mike Kaster, an employee, $1,000 to the Walnut Hills Cemetery Association and $1,000 to General Protestant Orphan Asylum.

After payment of the aforesaid gifts, the trust instrument provided that The Central Trust Company should continue to hold, manage and invest the residue in trust, and from the net income pay the sum of $10,000 per year to Irma Krueger, daughter of Clara K. Nebel, and the plaintiff in this action, for and

during her natural life; and, in addition, the trustee in its uncontrolled discretion was authorized to pay from the income or principal any sum which it might consider necessary, advisable or appropriate for the comfortable maintenance and support of Irma Krueger.

By paragraph 10 of the trust agreement, the grantor reserved the power at any time or times to "modify, alter or revoke this agreement, in whole or in part, by instrument or instruments in writing delivered to the trustee; and upon written notice from grantor the trustee is to return to or deliver for grantor, any and/or all the cash or property that trustee may be holding under the terms hereof; provided, however, that the duties, powers and liabilities of the trustee shall not be substantially changed or increased without its written consent."

It was directed that, upon the death of Irma Krueger, the balance of the trust fund be paid to First Reformed Church, the Monfort Heights Community Methodist Church and the General Protestant Orphan Home, in equal shares.

As was authorized by the trust agreement, additions were made to the corpus of the trust and there were withdrawals. The provision in favor of Irma Krueger was modified, so as to make her the beneficiary of the entire net income for her life, after her mother's death, and to provide that if Irma Krueger should leave surviving her any children, natural or adopted, they should receive the net income until the time when the youngest reached the age of 21 years or would have, in the event he or she died before reaching that age, and, upon that time being reached, the entire fund should be distributed to them per stirpes. In the absence of there being any child or children, the trust fund was to be paid to the aforesaid institutions, then surviving, in equal shares.

The provision in favor of those who were to be paid on Clara K. Nebel's death was also amended so as to double the grant to all except Mike Kaster, and the grant to him was increased to $5,000.

At the same time the trust agreement was executed, Clara K. Nebel executed her will, naming The Central Trust Company as executor. The will was duly probated, and The Central Trust Company was appointed executor and is a defendant

in this action in that capacity. There was no reference in either the trust agreement, or the will, to the other.

The validity of the trust agreement is assailed because of the power reserved to the grantor in paragraph 10, which we have quoted. It is said that Clara K. Nebel did not relinquish control during her lifetime and, therefore, the transaction cannot be sustained as an *inter vivos* gift; and, further, that it shows an intent to provide for a disposition of her property upon death, and not *inter vivos;* and that it is testamentary in character and, as it was not executed in compliance with the statutory requirements, is ineffective as a will.

The owner of property contemplating a gratuity has a choice of methods by which he may make effective his benefactions. If his intent is to divest himself of the title and all control at once, and to invest the transferee with title and complete control at once, he may do so by compliance with the law relating to gifts, which we inherited as a part of the common law from England. All that law requires is the delivery of the subject matter and the surrender of all control or dominion with the intent to do so. The common law made no provision for qualified transfer or control. If the owner contemplated retention of some control over the subject matter, a common-law gift would not carry out his purpose.

As Clara K. Nebel had no intention to relinquish all interest in and control of the subject matter at the time she executed the trust agreement and delivered the property to The Central Trust Company, it would serve no purpose to consider or discuss the requirements of the law relating to gifts. To carry out her purpose, she was required to find another method. In this situation, she had recourse to that jurisdiction which was administered in England by the Court of Chancery, which we inherited and which is now administered by the same Ohio courts as administer the common law. The methods and procedures of equity afford a vehicle to effect a gratuity and still retain an interest in, and control over, the subject matter. Clara K. Nebel had recourse to that method when she executed the trust agreement and conveyed the property to The Central Trust Company.

There is no ambiguity in the granting clause of this trust

agreement. In express terms it transfers the legal title to the property at once to The Central Trust Company. By the later provisions, it is made to appear that it was not the grantor's intent to relinquish all control of, or benefit in, the property. She retained the net income for life and granted estates to others than the grantee, to take effect upon the termination of her life estate. She imposed the duty upon the trustee, or grantee, of carrying out her purpose, and thereby created equitable estates in the beneficiaries; but she conveyed the absolute legal title to The Central Trust Company, and it was only through her control over the trustee, assisted by a court of equity, that she retained power and beneficial interest. She also imposed the right to modify, alter or revoke the title conveyed, thereby imposing a condition subsequent to all the estates created by the trust.

In support of their contenton that this trust agreement is void, plaintiff's counsel rely on certain Ohio cases, some of which we will consider.

The case of *Cleveland Trust Co., Trustee, v. White,* 134 Ohio St., 1, 15 N. E. (2d), 627, 118 A. L. R., 475, involved a trust that was created before the amendment to Section 8617, General Code, and that fact alone renders it inapplicable here. Furthermore, the facts are entirely dissimilar. The powers retained by the grantor were in many respects greater than those retained in this trust agreement, but, in respect to the power of revocation, it was more limited, in that revocation could be accomplished only when approved by the board of directors of The Cleveland Trust Company. The decision was limited by the syllabus to the facts in the case, but in the opinion of Judge Zimmerman, concurred in by all but one of his associates, we find no such limitation. At pages 6 and 7 of the opinion, we find it stated that:

"By the weight of authority, a trust, otherwise effective, is not rendered nugatory because the settlor reserves to himself the following rights and powers: (1) The use of the property and the income therefrom for life; (2) the supervision and direction of investments and reinvestments; (3) the amendment or modification of the trust agreement; (4) the revocation of the trust in whole or in part; (5) the consumption of principal."

A few years after the decision in *Cleveland Trust Co.* v. *White, supra,* the court was again called upon to consider a trust agreement executed before the amendment of Section 8617, General Code, in which an absolute power of revocation was reserved by the grantor. That is the case of *Central Trust Co.* v. *Watt,* 139 Ohio St., 50, 38 N. E. (2d), 185, in which the court placed in the syllabus the law as stated in the opinion in the former case. We quote the first paragraph of the syllabus:

"Where, by the terms of a trust instrument, an interest passes to the beneficiary during the life of the donor, the trust is not testamentary in character merely because the donor reserves a beneficial life estate or because he reserves the power to revoke the trust in whole or in part."

Of course, if what on its face appears to be a conveyance in trust could be shown to be a mere sham without any real intent to convey, the transaction could and would be disregarded, but, as is said in the *Cleveland Trust Co. case,* at page 9:

"In a case where any doubt may exist as to the honesty of purpose of a settlor in erecting an apparent trust structure, such doubt should be resolved in favor of a right intention. An interpretation is favored which assumes the performance of an act with a right rather than a wrong design."

Of course, there is no doubt that the settlor of this trust had an honest intention to create a trust.

Section 8617, General Code, was amended in 1921 (109 Ohio Laws, 215), and as amended is now Section 1335.01, Revised Code. It now provides:

"All deeds of gifts and conveyances of real or personal property made in trust for the exclusive use of the person making the same are void, but the creator of a trust may reserve to himself any use of power, beneficial or in trust, which he might lawfully grant to another, including the power to alter, amend, or revoke such trust, and such trust is valid as to all persons, except that any beneficial interest reserved to such creator may be reached by the creditors of such creator, and except that where the creator of such trust reserves to himself for his own benefit a power of revocation, a court, at the suit of any creditor of the creator, may compel the exercise of such power of revocation so reserved, to the same extent and under the same conditions that such creator could have exercised the same."

It seems to us that by the amendment the law, theretofore resting on judicial pronouncement, was placed in statutory form and removed all possible doubt as to the validity, *in toto*, of a genuine, honest conveyance in trust by a competent settlor, notwithstanding the reservation of an unrestricted right of revocation and in which the settlor reserves the entire net income during his life and disposes of the entire beneficial interest, effective upon his death. The instrument creates equitable titles, subject to be defeated by the happening of conditions subsequent.

The cases decided since the amendment of Section 8617, General Code (now Section 1335.01, Revised Code), which have applied the amendment to trust instruments executed thereafter, leave no doubt about its effectiveness to sustain the validity of a genuine transfer in trust, reserving to the grantor the use for life with power of revocation and amendment, with provision for disposition of the residue upon the death of the grantor.

The first case that came before the Supreme Court after the amendment is *Union Trust Co.* v. *Hawkins, Admr.*, 121 Ohio St., 159, 137 N. E., 389, 73 A. L. R., 190. The original trust instrument executed before the amendment of Section 8617, General Code, provided that unless the grantor had exercised his reserved right to revoke, the trustee should, upon the grantor's death, deliver the property to his personal representative. By amendment of the trust instrument after the amendment of the statute, the grantor directed the trustee to distribute the trust fund to specific persons named as beneficiaries. The Court of Appeals had affirmed a judgment holding that the instrument was testamentary in character and, as it did not comply with the statutes relating to wills, was void. After justifying the position of the majority of the court on the state of the common law as formulated in the first and second paragraphs of the syllabus, Chief Justice Marshall stated the question before the court, at page 179, as follows:

"This record therefore clearly presents the question whether by a trust agreement not executed in accordance with the statute of wills the creator of a trust can empower a trustee to make distribution of property, in accordance with the expressed wishes of the creator of a trust, after the death of the creator.

A decision of this case requires an interpretation of the amendment to Section 8617.''

The Chief Justice concluded his opinion, at page 181, with this statement:

''Upon the authority of the amendment to Section 8617, the judgments of the lower courts will be reversed.''

The holding stated in the third paragraph of the syllabus had the approval of all the judges of the court.

As *Union Trust Co.* v. *Hawkins* (121 Ohio St., 159), *supra,* was an action by the settlor's executor to recover the trust property from the trustee, the decision involved the identical issue raised in this case, and the decision was adverse to the plaintiff's contention.

The same construction was placed on Section 8617, General Code, in the case of *Bolles* v. *Toledo Trust Co., Exr.,* 144 Ohio St., 195, 58 N. E. (2d), 381, 157 A. L. R., 1164. The court, at page 219, quoted paragraph three of the syllabus of *Union Trust Co.* v. *Hawkins, Admr., supra,* and then called attention to the fact that all members of the court concurred in that statement of the law. It was assumed that the construction of Section 8617, General Code, was the settled law of the state.

However, in the *Bolles case,* the plaintiff was not a next of kin of the testator whose right was entirely dependent upon the bounty of the testator. She was his widow who had elected not to take under his will and was demanding her distributive share, as though her husband had died intestate. Unlike the case at bar, the testator had expressly referred to the trust agreement in his will and, thereby, incorporated the provisions of the trust into the will.

Through the decisions in *Doyle* v. *Doyle,* 50 Ohio St., 330, 34 N. E., 166, and a long line of other cases, a liberal policy toward widows had become the established law of Ohio and the statutes so construed as to award to them a share of the decedent's personal property beyond the power of the husband to deprive her by any testamentary provision.

It was in the light of that policy and this right of the widow and the fact that that trust agreement had been incorporated in the will that the court held that the widow was entitled to the distributive share in the trust estate, as though it were a part of the estate of an intestate.

The case of *Harris* v. *Harris, a Minor,* 147 Ohio St., 437, 72 N. E. (2d), 378, involved the identical question that was raised in *Bolles* v. *Toledo Trust Co.* (144 Ohio St., 195), *supra*—except that the trust agreement was not referred to in the will—and was decided solely upon the authority of that case. The construction theretofore placed on Section 8617, General Code, was not questioned.

However, it is worthy of note that three of the members of the court dissented, two of whom wrote dissenting opinions in which certain distinguishing facts were set forth; but all three were of the opinion that the trust agreement was valid as an *inter vivos* conveyance and that the trust corpus formed no part of the testator's estate in which the widow would be entitled to a distributive share upon her election not to take under the will.

The *Bolles* and *Harris cases* were decided on the strength of the widow's right, and not because of any weakness or defect in title, created by the trust instruments. The plaintiff has no such favored status. To sustain her contention would require us to disregard *Union Trust Co.* v. *Hawkins* (121 Ohio St., 159), *supra,* and the clear meaning of the statute.

The validity of this trust agreement is also attacked on the ground that Clara K. Nebel lacked sufficient mental capacity at the time of the creation of the trust. A large mass of evidence was introduced on this subject. We will summarize the impression it has made upon us.

Clara K. Nebel's husband died on April 6, 1950, leaving a will in which he bequeathed a rather large estate to her and in which she was named executrix. She accepted the appointment and proceeded to administer the estate, so that within a year the administration was completed and the net assets delivered to her. There is no question that she did not carefully and speedily perform her duty as executrix.

Almost at once, after she came into ownership of such a large estate, she began to consider how it would be handled and sought advice from competent and disinterested persons. It was on such advice that she concluded to resort to the conveyance in trust with power of revocation and amendment.

Every provision in this trust agreement is predicated upon some valid reason, based upon the circumstances of Mrs. Nebel's situation. Every amendment was made to carry out some

sound purpose. She had been told by her husband what his wishes were as to the ultimate disposition of this property which he had accumulated in his lifetime. She wanted to carry out his wishes, made known to her in his will and otherwise. Could anything be more natural and praiseworthy?

It is true that Mrs. Nebel was not in robust health, but, until she fell and broke her hip on January 8, 1953, she, when required, went to banks and other places of business, attended social functions and took part in them as any normal person would and took part in business transactions. It was not until December 8, 1953, that a guardian was appointed for her.

We fail to find any substantial evidence of lack of mental capacity sufficient to enter into this trust agreement and the modifications thereof.

On the whole case, we sustain the validity of the trust agreement and the amendments thereto.

*Judgment for defendants.*

Ross, P. J., and HILDEBRANT, J., concur.