In the Matter of the ESTATE OF Sharon W. GROESBECK, deceased.

David J. GROESBECK, Rebecca Bennion, Mary Stout, Jenifer Butera, and Hilea Groesbeck, Plaintiffs, Appellees, and Cross–Appellants,

v.

C. Jess GROESBECK, personal representative of the Estate of Sharon W. Groesbeck, Defendant, Appellant, and Cross–Appellee.

Nos. 950354, 950360.

Supreme Court of Utah.

April 4, 1997.

Leslie W. Slaugh, Provo, for plaintiffs.

Larry S. Jenkins, Salt Lake City, and Richard L. Tretheway, Springville, for defendant.

HOWE, Justice:

C. Jess Groesbeck, personal representative of the estate of his deceased wife, Sharon W. Groesbeck, appeals from the trial court's order and judgment that a revocable inter vivos trust created by the couple was invalid, that the deceased's will, in which she left her estate to the trustees of the trust was also invalid, that she died intestate, that Jess Groesbeck had waived his interest in her estate, and that her estate should be distributed in equal shares to their five children, David J. Groesbeck, Rebecca Bennion, Mary Stout, Jenifer Butera, and Hilea Groesbeck. The children cross-appeal, challenging the adequacy of the supersedeas bond their father posted to secure a stay of the judgments pending this appeal.

## FACTS

Jess and Sharon Groesbeck were married in 1959. On April 27, 1988, they created The

Groesbeck Family Trust (Trust), which they funded through the transfer of certain of their property. The Groesbecks were named co-trustees of the Trust, which was revocable during their lifetimes. The Trust included The C. Jess Groesbeck Trust and The Sharon W. Groesbeck Trust, each of which held the exclusive property of the named owner. In addition to the right to revoke or amend the Trust,[1] the Groesbecks reserved broad powers of control over the Trust property. The Trust document also allowed each settlor to make discretionary use of the property he or she had contributed without adhering to any formal requirements for amendment or withdrawal. During the lifetime of both spouses, the Trust income was to be paid to them and the Trustees had power to invade the Trust principal for their own use and benefit.

Upon the death of the first spouse to die, the Trust provided for the creation of a Marital Trust, consisting of the property in the surviving spouse's trust, plus a fractional share of the property in the deceased spouse's trust, and the creation of a Shelter Trust, consisting of the remaining balance of the Trust estate. The surviving spouse would have limited power to revoke or amend the provisions of the Marital Trust. The Shelter Trust was to be irrevocable from its creation. Upon the death of the surviving spouse, the Marital Trust would also become irrevocable and the Trust assets would be held or distributed as specified in the Trust document. The Trust document named the Groesbecks' children and their issue as residual beneficiaries.

The Groesbecks separated in 1989, and Sharon Groesbeck filed for divorce in 1990. The couple dismissed the complaint by stipulation in 1991 but remained separated. During the pendency of the divorce action, they entered into a property settlement agreement. The agreement specified that they would continue to file a joint income tax return, as though married, and that "[a]ll previous agreements entered into by us remain in force, including the Family Estate Plan Dated 27 April 1988." On November 6, 1991, Sharon Groesbeck died suddenly of a stroke.

Sharon Groesbeck had executed a last will and testament (Will) that provided for the payment of her debts and expenses and bequeathed "the residue of the property owned by me at my death, real and personal and wherever situated," to "the Trustees appointed under the Family Trust." The Will directed that

> the Residuary Estate shall be held, administered and distributed as part of that Trust according to the terms of that Trust and any amendments made to it prior to my death. It is my intention not to create a separate Trust by this Will nor to subject the Family Trust to the jurisdiction of the probate court.

When Jess Groesbeck, acting in his capacity as personal representative of his deceased wife's estate, sought final approval and distribution of the estate, the Groesbeck children petitioned for accounting and objected to the proposed final settlement and distribution. He then moved for summary judgment, seeking to have the Trust declared valid. The trial court entered a declaratory judgment that the Trust was illusory and invalid for failure to impose any enforceable duties on the trustee. Jess Groesbeck then moved to have the Will declared invalid and to determine heirs, alleging that if the Trust was invalid, the Will was also invalid because it directed that the decedent's estate should be distributed to the trustees of the Trust. Therefore, he contended that his wife had died intestate and that he was her sole heir

---

**1.** Article VI, *Revocation and Amendment*, provides in part:

> A. As long as both of the Undersigned are alive, each of them reserves the right, without the consent or approval of the other, to amend, modify or revoke their separate Trusts under this Agreement, in whole or in part, including

this Trust, concerning the property that each has contributed to the Trust.... Such revocation shall be by an instrument in writing signed by the Undersigned and shall be effective upon signing without notice to any successor Trustee....

under the laws of succession. The children admitted that the Will was invalid but contended that the Groesbecks' 1991 property settlement agreement effected a complete property settlement and thereby Jess Groesbeck had waived any interest in the estate. The trial court ruled that the Will was invalid because it left property to an invalid and illusory trust and noted that pursuant to Utah Code Ann. § 75–2–204 (1993), a "complete property settlement entered into after or in anticipation of separation or divorce is a waiver of all rights to elective share . . . and a renunciation by each of all benefits which would otherwise pass to him from the other by intestate succession." The court then set a hearing to take evidence as to whether the Groesbecks had made a "complete" property settlement. Following the hearing, the court concluded that the couple was separated at the time of the agreement, although they did not divorce, and that the property settlement qualified as a "complete" settlement in anticipation of continued separation. The court further ruled that Jess Groesbeck was not entitled to rescission of the property settlement agreement on the ground of mutual mistake and that he had no right to any share of the estate. The court ordered the entire estate to be distributed to the Groesbeck children and their issue by representation.

Jess Groesbeck moved to stay proceedings pending appeal, which the trial court granted contingent upon his posting a $200,000 bond. He now appeals to this court. The children cross-appeal, objecting to the amount of the bond set by the trial court. He seeks reversal of the trial court's judgment that the Trust and the Will are invalid. The children seek affirmance of the trial court's ruling that the Trust is illusory and invalid and that the property settlement was "complete," thereby constituting a waiver by Jess Groesbeck of any share of the estate pursuant to section 75–2–204.

## ANALYSIS

■ As the validity of the Will depends upon the validity of the Trust, we first exam-

ine the Groesbeck children's challenge to the Trust. The validity of the Trust is an issue of law, which we examine for correctness. "Controlling Utah case law teaches that 'correctness' means the appellate court decides the matter for itself and does not defer in any degree to the trial judge's determination of law." *State v. Pena,* 869 P.2d 932, 936 (Utah 1994).

The children's sole argument focuses on article VI of the Trust:

> B. While any of these Trusts remain revocable, the Undersigned may, in their discretion, make such use of the funds or properties of these Trusts as they may deem prudent, and such use shall be deemed to have been made with the consent and approval of the Trustees as though a formal writing were submitted in accordance with the provisions above.

They contend that this wording renders the Trust illusory and therefore testamentary and invalid for failure to comply with Utah statutes governing the execution of wills. Contrary to their argument here, however, the children's trial brief[2] stated, "The case law in the State of Utah seems to be well settled that provisions such as the one quoted above do not make a trust illusory or invalid."

■ The trial position is the correct one. It is well established that the law favors the creation of a trust. Restatement (Second) of Trusts § 37 (1959) [hereinafter Restatement] states, "A trust can be created although the settlor reserves a power to revoke or modify the trust or reserves powers with respect to the administration of the trust. . . ." Comment a. to that section adds that the settlor "can reserve to himself any power which he desires with respect to the property, if the power is not illegal . . ., and the reservation of the power will not of itself make the trust invalid." *Id.* cmt. a. Case law amply demonstrates that a reservation of powers such as the Groesbecks made does not "make the trust invalid." This court clarified Utah's recognition of revocable trusts in *Horn v.*

2. The children were represented by different    counsel at trial and on appeal.

*First Security Bank of Utah, N.A.*, 548 P.2d 1265 (Utah 1976), wherein we stated, "The majority of the decisions supports the view that a trust is valid, in spite of reserved powers, if the title to the property has passed to the trustee and vested interests have been created in the beneficiaries although those interests are subject to being divested." *Id.* at 1267.

■ In the instant case, legal title to the Trust property indisputably passed to the trustees because the settlors transferred the property to themselves as trustees and explicitly funded the Trust. There is no evidence that the settlors ever made a partial or total revocation. As to the vesting of an interest in a beneficiary, Trust article VI C provides, "The interest of the beneficiaries is a present interest which shall continue until this Trust is revoked or terminated other than by death." Furthermore, courts in other jurisdictions have held that " 'the interest of all beneficiaries *vested* at the creation of the trust, subject to being divested by the exercise of the reserved power to amend or revoke the indenture in trust.' " *Denver Nat'l Bank v. Von Brecht*, 137 Colo. 88, 322 P.2d 667, 671 (1958) (emphasis in original) (citing *Leahy v. Old Colony Trust Co.*, 326 Mass. 49, 93 N.E.2d 238, 239, 18 A.L.R.2d 1006 (Mass.1950)). Additionally, "[f]or the purpose of determining the validity of the trust, the interest of the beneficiary other than the grantor suffices if it is a contingent equitable remainder (*i.e.*, the beneficiary's interest is contingent upon surviving the grantor)." John R. Price, *Price on Contemporary Estate Planning*, § 10.9 (1992).

Our decision in *Sundquist v. Sundquist*, 639 P.2d 181 (Utah 1981), where we upheld an undocumented trust, simplified the creation of a trust even further. There we observed, "The settlor need not sign a formal trust instrument or employ any particular form of words." *Id.* at 183 (citations omitted). The creation of a trust requires only that "the settlor . . . have an intent to create a presently enforceable trust, the trust property must be clearly specified and set aside,

and the essential terms of the trust must be clear enough for the court to enforce the equitable duties that are the *sine qua non* of a trust relationship." *Id.* at 184 (citations omitted). In the instant case, the intention to create the Trust is evidenced by a signed document, the Trust property is clearly specified and was transferred into the Trust, and the document plainly enunciates the essential terms of the Trust. Therefore, the Groesbeck Family Trust meets all of the *Sundquist* requirements.

Although Trust article XIV devotes over four pages to detailing fifteen explicit powers of the trustees, the Groesbeck children contend that the settlors' reservation of power to access Trust assets without the formal authorization of a trustee amounts to ownership of the Trust and strips the trustees of enforceable duties. In *Denver National Bank*, 322 P.2d at 671, the Colorado Supreme Court, sitting *en banc*, upheld an inter vivos trust against the challenge that reservation of a power to revoke or amend rendered the trust testamentary and therefore invalid. The court relied on *National Shawmut Bank v. Joy*, 315 Mass. 457, 53 N.E.2d 113, 124 (1944), for the proposition that the reservation by the settlor of both an interest for life and a power to revoke the trust does not make the gift over to the statutory next of kin incomplete or testamentary and that " '[t]he same is true, a fortiori, of a reservation of the lesser powers to alter or amend the trust, or to withdraw principal from it, either *with or without the consent of the trustee.' " Denver Nat'l Bank*, 322 P.2d at 671 (emphasis added). The Colorado court agreed with the *Shawmut* court: " 'Obviously an exercise of the power to revoke would enable the settlor to establish a new trust changed as he might desire. There is no reason why he may not reserve the right to take a short cut by altering or amending the original trust instrument.' " *Id.* (quoting *Shawmut*, 53 N.E.2d at 124). Additionally, the Colorado court emphasized that a trust is not rendered nugatory by the settlors' reservation of the power to " '(1) [use] the property and the income therefrom for life; (2)

[supervise and direct] investments and reinvestments; (3) [amend or modify] the trust agreement; (4) [revoke] the trust in whole or in part; (5) [consume] the principal.' " *Id.* (quoting *Cleveland Trust Co. v. White,* 134 Ohio St. 1, 15 N.E.2d 627, 629, 118 A.L.R. 475 (1938)). When such reserved powers are exercised, withdrawals are treated as a pro tanto revocation of the trust as to amounts withdrawn. *Id.* (citing *Whalen v. Swircin,* 141 Neb. 650, 4 N.W.2d 737, 740 (1942)). Therefore, we hold that Jess and Sharon Groesbeck's reservation of the power to access Trust assets without any formal authorization by a trustee is in harmony with case law and does not render the Trust invalid. As a result, Sharon Groesbeck's Will leaving her estate to the trustees of the Trust is valid.

Lastly, Jess Groesbeck contends that he and his wife did not make a "complete" property settlement agreement that was "entered into after or in anticipation of separation or divorce" as provided for in section 75–2–204 and therefore that section does not operate to annul the provision of her Will in which she devises and bequeaths her residuary estate to the trustee of the Trust. The children insist that there was a "complete" property settlement agreement.

Section 75–2–204, so far as pertinent here, provides:

> Unless it provides to the contrary, a waiver of "all rights" (or equivalent language) in the property or estate of a present or prospective spouse or a complete property settlement agreement entered into after or in anticipation of separation or divorce is a waiver of all rights to elective share, homestead, allowance, exempt property, and family allowance by each spouse in the property of the other and a renunciation by each of all benefits which would otherwise pass to him from the other by intestate succession or by virtue of the provisions of any will executed before the waiver or property settlement.

It is unnecessary for us to determine whether the property settlement before us is "complete" within the meaning of the statute. Even if we assume it to be "complete," it does not affect the provision of Sharon Groesbeck's Will that leaves her residuary estate to the trustees of the Trust because nothing "pass[es] to" Jess from Sharon by virtue of the provisions of her Will. The fact that he is a beneficiary of the Trust is irrelevant because the statute does not provide for a waiver or a renunciation in that instance. He has not asserted a claim for an elective share, a homestead allowance, exempt property, or a family allowance.

The judgment of the trial court invalidating the Trust and Sharon Groesbeck's Will, determining that she died intestate, and distributing her estate to the children is reversed; the case is remanded for the court to enter a decree distributing her estate in accordance with her Will. In view of this order, it is unnecessary for us to reach the issue raised on cross-appeal as to the sufficiency of the supersedeas bond.

ZIMMERMAN, C.J., and DURHAM, RUSSON and DAWSON, JJ., concur in Justice HOWE's opinion.

Having disqualified himself, Associate Chief Justice STEWART does not participate herein; District Judge GLEN R. DAWSON sat.